Maher v. The People.

## William Maher v. The People.

In a prosecution for an assault with intent to murder, the actual intent to kill must be found, and that under circumstances which would make the killing murder.

Malice aforethought is as essential an ingredient of the offense of murder as the act of killing, and the presumption of innocence applies equally to both ingredients of the offense. Hence the ‚burden of proof, as to each, rests upon the prosecution.

If a homicide be committed under the influence of passion, or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition, the offense is manslaughter only, and not *murder.*

To reduce the offense to this grade, the reason must, at the time of the act, be disturbed or obscured by passion to an extent which *might* render an ordinary man, of fair average disposition, *liable* to act rashly, or without due deliberation or reflection, and from passion rather than judgment.

The question as to what is an adequate or reasonable provocation, is one of fact for the jury.

So also is the question whether a reasonable time had elapsed for the passions to cool, and reason to resume its control.

Indictment for assault with intent to murder one H. The prisoner offered evidence tending to show the commission of adultery by H. with the prisoner's wife, within half an hour before the assault; that the prisoner saw them going into the woods together under circumstances calculated strongly to impress upon his mind the belief of an adulterous purpose; that he followed after them to the woods; that they were seen not long after coming from the woods, and that the prisoner followed on in hot pursuit, and was informed on the way that they had committed adultery on the day before; that he followed H. into a saloon, in a state of excitement, and there committed the assault. *Held,* that the evidence was proper, as from it it would have been competent for the jury to find that the act was committed in consequence of the passion excited by the provocation, and in a state of mind which would have given to the homicide, had death ensued, the character of manslaughter only.

*Held further,* that these facts, and all the circumstances which led to the assault, were a part of the *res gestae,* which the jury were entitled to have before them to show what was the real nature of the act, and the state of mind and intention with which it was done.

The statement of the prisoner in a criminal case is for the consideration of the jury, who may give it such credit, in whole or in part, as under all the circumstances they may think it entitled to.

*Heard April* 19th. *Decided May* 21st.

Error to Houghton District Court. The case is sufficiently stated in the opinion of CHRISTIANCY J.

*Buel & Trowbridge,* for plaintiff in error:

1. Malice aforethought is the grand criterion which distinguishes murder from all other killings.

The *quo animo,* or state of mind under which the offense is committed, is always a legitimate subject of inquiry: — *Bish. Cr. L.* § 227 ; 2 *Ibid.* § 616 ; *Pond v. People,* 8 *Mich.* 150 ; 3 *Inst.* 107 ; *Burr. Cir. Ev.* 282 *and n.*

Accordingly the *appearance* of an actual necessity for taking life in self-defense, though it in fact do not exist, may justify the act; *insanity* may excuse it, and *sudden transport of passion* may mitigate it to a lesser offense. Yet each of these circumstances is a state of the mind.

The definition itself of murder requires, that it be committed by a person of sound mind and memory, and with malice aforethought : — 3 *Coke's Inst.* 47 ; 4 *Bl. Com.* 195. Each of these ingredients is a fact; each puts in issue the state of the mind, and each *must be passed upon by the jury.*

In a case of murder it is always a proper subject of inquiry, whether the accused acted from deliberation and intelligence; whether he had command of his passions and acted from a mind undisturbed; or whether reason had lost in part its sway: — 2 *Bish. Cr. L.* §§ 630, 631 *and n;* 1 *East P. C.* 222 ; *Whart. Cr. L.* §§ 983, 984 ; *Burr. Cir. Ev.* 284 *and n.*

It is a true test of manslaughter that the homicide be committed in a sudden transport of passion arising upon a reasonable provocation, and without malice. The law requires only a *reasonable* provocation. The authorities use the terms *adequate, sufficient and reasonable,* when applied to the provocation, as equivalent : — 1 *East P. C.* 232, *Whart. Cr. L.* § 987 ; 2 *Bish. Cr. L.* § 630 *and n;* 11 *Humph.* 200. A *reasonable* provocation, is one for which a good reason can be given, and which might naturally and rationally, according to the laws of the human mind, produce the alleged sudden transport of passion.

By *sufficient* cooling time, is meant a reasonable time; therefore, each case depends on its own circumstances:—*Whart. Cr. L.* § 990; 2 *Bish. Cr. L.* § 641; 1 *Speers*, 384. A *reasonable* cooling time, is that for which a good reason can be given, and in which the sudden transport of passion might naturally and rationally, according to the laws of the human mind, pass away.

2. Acting on information: "When it becomes a subject of inquiry whether a person acted *bona fide*, prudently or wisely, the information and circumstances on the faith of which he acted, whether true or false, are original and material evidence. This is often illustrated in actions for malicious prosecution:"—*Whart. Cr. L.* § 663; 1 *Greenl. Ev.* § 101, *and n.* Such evidence bears directly upon the question of malice, and state of the prisoner's mind. In the following cases of alleged murder, the parties acted under provocation arising on information which was admitted in evidence:—*Cases of Jarboe, of Mercer, and of Norman, cited in Sickles' case; Boyley's case*, 2 *Cro.* 296; *McWhirt's case*, 3 *Gratt.* 594.

So evidence is often admitted of information communicated to the prisoner, of prior threats against him by the assailing party. See *Pond's case*, 8 *Mich.* 153.

3. As to the taking in the act; the law does not require that the husband stand by and actually see the adulterous act.

Adultery can always be proved by facts and circumstances. Those offered in this case transpired under the eyes of the accused; they tended to establish a taking in the act, within the meaning of the law. Would a blind man be without protection when his remaining senses leave no room for doubt?

A mistake may exist; still "the guilt of the accused must depend upon the circumstances as they appear to him." One may act in self-defense upon reasonable grounds for believing that the danger is actual and imminent, though he be mistaken:—*Pond's case*, 8 *Mich.* 150.

So too, an insane delusion or belief may exist, as to unreal facts, which will justify or excuse a homicide committed under its influence, if, being real, they would have that effect: — 1 *Bish. Cr. L.* § 295.

4. As to the *res gestae:* most of the matters offered and excluded immediately preceded the assault, tended to illustrate it, were directly connected with it as its cause, and with it constituted one continuing occurrence. They were, therefore, clearly admissible in evidence as belonging to the *res gestae: — Potter's case,* 5 *Mich.* 5; 1 *Greenl. Ev.* § 108 *and n.*

They belong to the class of concomitant circumstances, which include those immediately following and preceding the criminal act, as well as those strictly contemporaneous with it: — *Burr. Cir. Ev.* 368.

*C. Upson, Attorney General,* for the People:

If a husband find his wife in the act of adultery, and, provoked by the wrong, instantly takes the life of the adulterer, the homicide is only manslaughter. But to entitle it to this tender consideration, the detection must be in the very act. In all cases the party must see the act done, and if, after merely hearing of, or suspecting such an outrage, the wronged individual immediately takes vengeance on the other, by pursuing and killing him, his offense is murder: — *Foster,* 296; *T. Raym.* 212; 1 *Vent.* 158; 1 *East P. C.* 234; 8 *C. & P.* 182; 2 *C. & K.* 814; 3 *Gratt.* 594; 8 *Ired. Law,* 330; 1 *Russ. on Cr.* 525 *and* 581; 2 *Bish. Cr. L.* § 638 *and notes* 2, 3 *and* 4; *Whar. Cr. L.* § 984 *and n. a, 4th ed.*

The books which speak of the slaying of the adulterer by the husband as only manslaughter under certain circumstances, all instance the case where he finds the adulterer in the act of adulterous intercourse with his wife, and immediately kills him; but none of the cases speak of thus justifying the killing of a person by the husband, on account

of information or suspicion of acts of adultery committed with his wife. Most of them expressly say that in all such circumstances the killing would be murder.

See particularly on this point the language of the Court in 8 *Car. & P.* 182, and 2 *C. & K.* 814, above quoted.

CHRISTIANCY J.:

The prisoner was charged with an assault with intent to kill and murder one Patrick Hunt. The evidence on the part of the prosecution was, that the prisoner entered the saloon of one Michael Foley, in the village of Houghton, where said Hunt was standing with several other persons; that prisoner entered through a back door and by a back way leading to it, in his shirt sleeves, in a state of great perspiration, and appearing to be excited; and on being asked if he had been at work, said he had been across the lake; that, on entering the saloon, he immediately passed nearly through it to where said Hunt was standing, and, on his way towards Hunt, said something, but it did not appear what, or to whom; that as soon as the prisoner came up to where Hunt was standing, he fired a pistol at Hunt, the charge of which took effect upon the head of Hunt, in and through the left ear, causing a severe wound thereon; by reason of which Hunt in a few moments fell to the floor, was partially deprived of his sense of hearing in that ear, and received a severe shock to his system which caused him to be confined to his bed for about a week, under the care of a physician; that immediately after the firing of the pistol prisoner left the saloon, nothing being said by Hunt or the prisoner. It did not appear how, or with what, the pistol was loaded. The prisoner offered evidence tending to show an adulterous intercourse between his wife and Hunt on the morning of the assault, and within less than half an hour previous; that the prisoner saw them going into the woods together about half an hour before the assault; that on their coming

out of the woods the prisoner followed them immediately (evidence having already been given that prisoner had followed them to the woods); that, on their coming out of the woods, the prisoner followed them and went after said Hunt into the saloon, where, on his arrival, the assault was committed; that the prisoner on his way to the saloon, a few minutes before entering it, was met by a friend who informed him that Hunt and the prisoner's wife had had sexual intercourse the day before in the woods. This evidence was rejected by the Court, and the prisoner excepted. Was the evidence properly rejected? This is the main question in the case, and its decision must depend upon the question whether the proposed evidence would have tended to reduce the killing—had death ensued—from murder to manslaughter, or rather, to have given it the character of manslaughter instead of murder? If the homicide—in case death had ensued—would have been but manslaughter, then defendant could not be guilty of the assault *with intent to murder*, but only of a simple assault and battery. The question therefore involves essentially the same principles as where evidence is offered for a similar purpose in a prosecution for murder; except that, in some cases of murder, an actual intention to kill need not exist; but in a prosecution for an assault *with intent to murder*, the actual intention to kill must be found, and that under circumstances which would make the killing murder.

Homicide, or the mere killing of one person by another, does not, of itself, constitute murder; it may be murder, or manslaughter, or excusable or justifiable homicide, and therefore entirely innocent, according to the circumstances, or the disposition or state of mind or purpose, which induced the act. It is not, therefore, the act which constitutes the offense, or determines its character; but the *quo animo*, the disposition, or state of mind, with which it is done. *Actus non facit reum nisi mens sit rea.*" *People v Pond,* 8 *Mich.* 150.

10 MICH.—O.

To give the homicide the legal character of murder, all the authorities agree that it must have been perpetrated with malice prepense or aforethought. This malice is just as essential an ingredient of the offense as the act which causes the death; without the concurrence of both, the crime can not exist; and, as every man is presumed innocent of the offense with which he is charged till he is proved to be guilty, this presumption must apply equally to both ingredients of the offense—to the malice as well as to the killing. Hence, though the principle seems to have been sometimes overlooked, the burden of proof, as to each, rests equally upon the prosecution, though the one may admit and require more direct proof than the other; malice, in most cases, not being susceptible of direct proof, but to be established by inferences more or less strong, to be drawn from the facts and circumstances connected with the killing, and which indicate the disposition or state of mind with which it was done. It is for the Court to define the legal import of the term, malice aforethought, or, in other words, that state or disposition of mind which constitutes it; but the question whether it existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact in the cause, and that they must give such weight to the various facts and circumstances accompanying the act, or in any way bearing upon the question, as, in their judgment, they deserve: and that the Court have no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as presumption of law. If Courts could do this, juries might be required to find the fact of malice where they were satisfied from the whole evidence it did not exist. I do not here speak of those cases in which the death is caused in the attempt to commit some other offense, or in illegal resistance to public officers, or other classes of cases which may rest upon peculiar grounds of

public policy, and which may or may not form an exception; but of ordinary cases, such as this would have been had death ensued. It is not necessary here to enumerate all the elements which enter into the legal definition of malice aforethought. It is sufficient to say that, within the principle of all the recognized definitions, the homicide must, in all ordinary cases, have been committed with some degree of coolness and deliberation, or, at least, under circumstances in which ordinary men, or the average of men recognized as peaceable citizens, would not be liable to have their reason clouded or obscured by passion; and the act must be prompted by, or the circumstances indicate that it sprung from, a wicked, depraved or malignant mind — a mind which, even in its habitual condition and when excited by no provocation which would be liable to give undue control to passion in ordinary men, is cruel, wanton or malignant, reckless of human life, or regardless of social duty.

But if the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition; then the law, out of indulgence to the frailty of human nature, or rather, in recognition of the laws upon which human nature is constituted, very properly regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter.

To what extent the passions must be aroused and the dominion of reason disturbed to reduce the offense from murder to manslaughter, the cases are by no means agreed; and any rule which should embrace all the cases that have been decided in reference to this point, would come

very near obliterating, if it did not entirely obliterate, all distinction between murder and manslaughter in such cases. We must therefore endeavor to discover the principle upon which the question is to be determined. It will not do to hold that reason should be entirely dethroned, or overpowered by passion so as to destroy intelligent volition: *State v. Hill*, 1 *Dev. & Bat.* 491; *Haile v. State*, 1 *Swan*, 248; *Young v. State*, 11 *Humph.* 200. Such a degree of mental disturbance would be equivalent to utter insanity, and, if the result of adequate provocation, would render the perpetrator morally innocent. But the law regards manslaughter as a high grade of offense; as a felony. On principle, therefore, the extent to which the passions are required to be aroused and reason obscured must be considerably short of this, and never beyond that degree within which ordinary men have the power, and are therefore morally as well as legally bound, to restrain their passions. It is only on the idea of a violation of this clear duty, that the act can be held criminal. There are many cases to be found in the books in which this consideration, plain as it would seem to be in principle, appears to have been, in a great measure, overlooked, and a course of reasoning adopted which could only be justified on the supposition that the question was between murder and excusable homicide.

The principle involved in the question, and which, I think, clearly deducible from the majority of well considered cases, would seem to suggest as the true general rule, that reason should, at the time of the act, be disturbed or obscured by passion to an extent which *might render* ordinary men, of fair average disposition, *liable* to act rashly or without due deliberation or reflection, and from passion, rather than judgment.

To the question, what shall be considered in law a reasonable or adequate provocation for such a state of mind, so as to give to a homicide, committed under its

influence, the character of manslaughter; on principle, the answer, as a general rule, must be, anything the natural tendency of which would be to produce such a state of mind in ordinary men, and which the jury are satisfied did produce it in the case before them—not such a provocation as must, by the laws of the human mind, produce such an effect with the *certainty that physical effects follow from physical causes;* for then the individual could hardly be held morally accountable. Nor, on the other hand, must the provocation, in every case, be held sufficient or reasonable, because such a state of excitement has followed from it; for then, by habitual and long continued indulgence of evil passions, a bad man might acquire a claim to mitigation which would not be available to better men, and on account of that very wickedness of heart which, in itself, constitutes an aggravation both in morals and in law.

In determining whether the provocation is sufficient or reasonable, *ordinary human nature,* or the average of men recognized as men of fair average mind and disposition, should be taken as the standard—unless, indeed, the person whose guilt is in question be shown to have some peculiar weakness of mind or infirmity of temper, not arising from wickedness of heart or cruelty of disposition.

It is doubtless, in one sense, the province of the Court to define what, in law, will constitute a reasonable or adequate provocation, but not, I think, in ordinary cases, to determine whether the provocation proved in the particular case is sufficient or reasonable. This is essentially a question of fact, and to be decided with reference to the peculiar facts of each particular case. As a general rule, the Court, after informing the jury to what extent the passions must be aroused and reason obscured to render the homicide manslaughter, should inform them that the provocation must be one, the *tendency* of which would be to produce such a degree of excitement and disturbance

in the minds of ordinary men; and if they ·should find such provocation from the facts proved, and should further find that it did produce that effect in the particular instance, and that the homicide was the result of such provocation, it would give it the character of manslaughter. Besides the consideration that the question is essentially one of fact, jurors, from the mode of their selection, coming from the various classes and occupations of society, and conversant with the practical affairs. of life, are, in my opinion, much better qualified to judge of the sufficiency and tendency of a given provocation, and much more likely to fix, with some degree of accuracy, the standard of what constitutes the average of ordinary human nature, than the Judge whose habits and course of life give him much less experience of the workings of passion in the actual conflicts of life.

The Judge, it is true, must, to some extent, assume to decide upon the sufficiency of the alleged provocation, when the question arises upon the admission of testimony; and when it is so clear as to admit of no reasonable doubt upon any theory, that the alleged provocation could not have had any tendency to produce such state of mind, in ordinary men, he may properly exclude the evidence; but, if the alleged provocation be such as to admit of any reasonable doubt, whether it might not have had such tendency, it is much safer, I think, and more in accordance with principle, to let the evidence go to the jury under the proper instructions. As already intimated, the question of the reasonableness or adequacy of the provocation must depend upon the facts of each particular case. That can, with no propriety, be called a rule (or a question) of law which must vary with, and depend upon the almost infinite variety of facts presented by the various cases as they arise. See *Stark. on Ev., Amer. Ed.* 1860, *pp.* 676 *to* 680. The law can not with justice assume, by the light of past decisions, to catalogue all the various facts and

combinations of facts which shall be held to constitute reasonable or adequate provocation. Scarcely two past cases can be found which are identical in all their circumstances; and there is no reason to hope for greater uniformity in future. Provocations will be given without reference to any previous model, and the passions they excite will not consult the precedents.

The same principles which govern, as to the extent to which the passions must be excited and reason disturbed, apply with equal force to the time during which its continuance may be recognized as a ground for mitigating the homicide to the degree of manslaughter, or, in other words, to the question of cooling time. This, like the provocation itself, must depend upon the nature of man and the laws of the human mind, as well as upon the nature and circumstances of the provocation, the extent to which the passions have been aroused, and the fact, whether the injury inflicted by the provocation is more or less permanent or irreparable. The passion excited by a blow received in a sudden quarrel, though perhaps equally violent for the moment, would be likely much sooner to subside than if aroused by a rape committed upon a sister or a daughter, or the discovery of an adulterous intercourse with a wife; and no two cases of the latter kind would be likely to be identical in all their circumstances of provocation. No precise time, therefore, *in hours or minutes,* can be laid down by the Court, as a rule of law, within which the passions *must be held* to have subsided and reason to have resumed its control, without setting at defiance the laws of man's nature, and ignoring the very principle on which provocation and passion are allowed to be shown, at all, in mitigation of the offense. The question is one of reasonable time, depending upon all the circumstances of the particular case; and where the law has not defined, and can not without gross injustice define the precise time which shall be deemed reasonable, as it has with respect to notice of the dishonor of

commercial paper. In such case, where the law has defined what shall be reasonable time, the question of such reasonable time, the facts being found by the jury, is one of law for the Court; but in all other cases it is a question of fact for the jury; and the Court can not take it from the jury by assuming to decide it as a question of law, without confounding the respective provinces of the Court and jury: — Stark. Ev., Ed. of 1860, pp. 768, 769, 774, 775. In Rex v. Howard, 6 C. & P. 157, and Rex v. Lynch, 5 C. & P. 324, this question of reasonable cooling time was expressly held to be a question of fact for the jury. And see Whart. Cr. L., 4th ed., § 990 and cases cited. I am aware there are many cases in which it has been held a question of law; but I can see no principle on which such a rule can rest. The Court should, I think, define to the jury the principles upon which the question is to be decided, and leave them to determine whether the time was reasonable under all the circumstances of the particular case. I do not mean to say that the time may not be so great as to enable the Court to determine that it is sufficient for the passion to have cooled, or so to instruct the jury, without error; but the case should be very clear. And in cases of applications for a new trial, depending upon the discretion of the Court, the question may very properly be considered by the Court.

It remains only to apply these principles to the present case. The proposed evidence, in connection with what had already been given, would have tended strongly to show the commission of adultery by Hunt with the prisoner's wife, within half an hour before the assault; that the prisoner saw them going to the woods together, under circumstances calculated strongly to impress upon his mind the belief of the adulterous purpose; that he followed after them to the woods; that Hunt and the prisoner's wife were, not long after, seen coming from the woods, and that the prisoner followed them, and went in hot pursuit after Hunt

to the saloon, and was informed by a friend on the way that they had committed adultery the day before in the woods. I can not resist the conviction that this would have been sufficient evidence of provocation to go to the jury, and from which, when taken in connection with the excitement and "great perspiration" exhibited on entering the saloon, the hasty manner in which he approached and fired the pistol at Hunt, it would have been competent for the jury to find that the act was committed in consequence of the passion excited by the provocation, and in a state of mind which, within the principle already explained, would have given to the homicide, had death ensued, the character of manslaughter only. In holding otherwise the Court below was doubtless guided by those cases in which Courts have arbitrarily assumed to take the question from the jury, and to decide upon the facts or some particular fact of the case, whether a sufficient provocation had been shown, and what was a reasonable time for cooling.

But there is still a further reason why the evidence should have been admitted. No other cause being shown for the assault, the proposed evidence, if given, could have left no reasonable doubt that it was, in fact, committed in consequence of the alleged provocation, whether sufficient or not; and all the facts constituting the provocation, or which led to the assault, being thus closely connected, and following each other in quick succession, and the assault itself in which they resulted, constituted together but one entire transaction. The circumstances which, in fact, led to the assault were a part of the *res gestae*, which the jury were entitled to have before them, to show what was the *real nature of the act*, the *quo animo*, state of mind and intention, with which it was done. The object of the trial should be to show the real nature of the whole transaction, *whether its tendency may be to establish guilt or innocence;* but, until the whole is shown which might have any bearing one way or the

other, its tendency to establish the one or the other can not be known. Any inference drawn from a detached part of one entire transaction may be entirely false. And, for myself, I am inclined to the opinion, that all the facts constituting the *res gestae*, so far as the prosecuting counsel is informed of, and has the means of proving them, should, on principle and in fairness to the prisoner, be laid before the jury by the prosecution. They naturally constitute the prosecutor's case. And whenever it may appear evident to the Court, that but a part of the facts, or a single fact, has been designedly selected by the prosecution from the series constituting the *res gestae*, or entire transaction, and that the evidence of the others is within the power of the prosecutor, it would, I think, be the duty of the Court to require the prosecutor to show the transaction as a whole. See by analogy, *Holden's case*, 8 *C. & P.* 606 ; *Stoner's case*, 1 *C. & K.* 650 ; *Chapman's case*, 8 *C. & P.* 559 ; *Orchard's case, Ibid. note ; Roscoe Cr. Ev.* 164. Until this should be done it is difficult to see how any legitimate inference of guilt, or of the degree of the offense, can be drawn ; as every reasonable hypothesis of innocence, or a lower degree of guilt, is not, it seems to me, excluded. Criminal prosecutions do not stand on the same ground, in this respect, as civil cases. In the latter no such presumption is to be overcome; nor is it necessary to exclude every other hypothesis than the one sought to be established : — 3 *Greenl. Ev.* § 29. But however this may be, it was clearly competent for the defendant to show the rest of the transaction, whether known to the prosecution or not. I think, therefore, for the several reasons stated, the evidence offered was erroneously rejected.

After the evidence was closed, the prisoner was called by his counsel to make a statement under the statute. This statement went strongly to corroborate the facts offered to be shown by the evidence rejected. The prisoner's counsel requested the Court to charge, that the prisoner's

statement was for the consideration of the jury; that they should receive it as evidence in the cause, and give it such credit as, under the circumstances, they believed it entitled to; which the Court refused, and the prisoner's counsel excepted. But the Court in this connection did charge, that the statement could not be received in relation to matters of defense excluded by the Court, the conduct of Hunt and the prisoner's wife; but that where there were [facts and circumstances in relation to the commission of the offense, the jury might consider the prisoner's statement in considering the evidence, and give it such weight as they thought proper.

The only substantial error of the Court in relation to this "statement," is that which grew out of the exclusion of the evidence, and was the natural consequence of that error. All he intended to say was, that the statement might be considered by the jury so far only as it had any bearing upon the case; but that, so far as it related to the conduct of Hunt and the prisoner's wife, it had no such bearing. It was, thus far, erroneous; but in other respects substantially correct. It is of little consequence whether the statement be called evidence, or by some other name. It is not evidence within the ordinary acceptation of that term; because not given under the sanction of an oath, nor is the prisoner liable for perjury or to any other penalty, if it be false; nor can a full cross-examination be enforced. Yet it is clear the jury have a right to give it such credit, in whole or in part, as under all the circumstances they may think it entitled to.

The judgment should be reversed, and a new trial granted.

MARTIN CH. J. and CAMPBELL J. concurred.

MANNING J.:

I differ from my brethren in this case. I think the evicence was properly excluded. To make that manslaughter

which would otherwise be murder, the provocation—I am not speaking of its sufficiency, but of the provocation itself—must be given in the presence of the person committing the homicide. The cause of the provocation must occur in his presence. PARK J. in *Regina v. Fisher*, 8 *C. & P.* 182, in speaking of the cause of provocation says, " In all cases the party must see the act done." Any other rule in an offense so grave as taking the life of a fellow being, in the heat of passion, I fear would be more humane to the perpetrator than wise in its effects on society. More especially since the abolition of the death penalty for murder, and the division of the crime into murder in the first and second degree. There is not now the same reason, namely, the severity of the punishment, for relaxing the rules of law in favor of a party committing homicide as before. It would, it seems to me, be extremely mischievous to let passion engendered by suspicion, or by something one has heard, enter into and determine the nature of a crime committed while under its influence. The innocent as well as the guilty, or those who had not as well as those who had given provocation, might be the sufferers. If it be said that in such cases the giving of the provocation must be proved or it would go for nothing; the answer is, that the law will not, and should not permit the lives of the innocent to be exposed with the guilty in this way, as it would do did it not require the cause of the provocation to occur in the presence of the person committing the homicide. See *Regina v. Fisher*, 8 *C. & P.* 182; *Regina v. Kelly*, 2 *C. & K.* 814; *and State v. John*, 8 *Ired.* 330.

I think the judgment should be affirmed.

*Judgment reversed, and new trial ordered.*