### THE PEOPLE vs. SMITH.

To constitute murder in the first degree the killing must be deliberate and premeditated; but the length of time before the act when this purpose is deliberately formed and the act premeditated is unimportant. It is enough if the purpose is deliberately formed and precedes and induces the act.

To constitute murder in the second degree there must be an unlawful killing, and a purpose to kill preceding and accompanying the act, formed suddenly, without that deliberation and premeditation which distinguish murder in the first degree, but not such sudden provocation and stirring of the passions as preclude the entire exercise of reason.

The desire and intent to take human life without provocation or necessity is such a state of mind as the law denominates malice.

To exempt a person from legal responsibility on the ground of a derangement of the mental faculties, such derangement must be such as to prevent intelligent volition in respect to the act with which he is charged. He should have, as necessary to liability, so much memory and power of perception and reflection as will enable him to identify his acquaintances, to recognize his relations to them, to understand as ordinary minds do the nature and uses of material objects around him, and to appreciate the obvious and universal obligation to abstain from violence and bloodshed in the peaceable intercourse of his neighbors with him.

*Muskegon County Circuit Court, January,* 1870.

The respondent in this case is charged with the murder of Joshua Platt. The homicide is admitted; defense, insanity.

*Smith, McReynolds* and *Nims* for the People.

*Baker, Thompson* and *Eggleston* for Respondent.

*Charge of the Court,* SUTHERLAND, J.—

GENTLEMEN OF THE JURY: The statute which prescribes a punishment for murder would be only an impotent threat against the guilty were there no judicial instrumentalities by which the accused could be apprehended, tried, and, if found guilty, delivered to be punished.

The safety of communities, which that law is designed to secure, can only be realized by its faithful execution. There is an imperative necessity for a prompt arrest of persons accused and thorough and impartial trial to ascertain their guilt or innocence. The enforcement of criminal laws in a manner most conducive to the public welfare depends, in a very important sense, on the fidelity, intelligence, and moral courage of jurors, on whom devolves the duty of deciding, upon testimony, the truth of every criminal accusation. If, through a want of judgment, or by failing to appreciate the relation of their duties to the general good, or if through extreme sensibility, in view of the possible consequence of a conviction to the prisoner, they acquit the guilty, the laws against crime are thereby suspended. Such culpable mistakes would be an evil example to the whole class of depraved men inclined to crime. On the other hand, if, through inattention to the testimony, or by a careless and precipitate judgment, a jury pronounce an innocent man guilty, the wrong is no less serious. There is, therefore, no escape from grave responsibility.

To enable a jury to pursue their inquiry with a definite aim the law is explained to them by the Court. They are thus informed what facts must be found to warrant a conviction. With these facts, as points constantly in view, they should weigh the evidence, and pronounce according to the result to which that evidence conducts them.

In this case the respondent is charged with murder, which is the unlawful killing, by a person of sound mind and discretion, of a reasonable creature, it being with malice aforethought. It consists, under our statute, of two degrees. Those cases among others in which the unlawful killing is deliberate and premeditated are of murder in the *first* degree. Those cases in which there is an unlawful killing with malice aforethought, but

not committed with deliberate premeditation, and cases in which malice is implied from the killing in the commission or attempt to commit some other felony than arson, rape, robbery, or burglary, are of murder in the *second* degree.

To bring this case within the first degree the jury must find that there was malice aforethought evinced by a deliberate and premeditated purpose to kill. It is unnecessary that this deliberation should continue for any particular time, but a deliberate purpose should be shown to exist in the prisoner's mind before and at the time of the act. In short, the statute expresses it as clearly as words can. The killing must be deliberate and premeditated. The length of time before the act when this purpose is deliberately formed and the act premeditated is unimportant. It is enough if the purpose is deliberately formed and precedes and induces the act.

The correlative view of murder in the second degree, passing over, as inapplicable to this case, other features of it, may be thus stated : there must be an unlawful killing, and there must be a purpose to kill, preceding and accompanying the act, formed suddenly, before the killing, and without that deliberation and premeditation which distinguish murder in the first degree. And there must not be such sudden provocation, heating the blood, stirring the passions, and precluding the exercise of reason, as would, in a legal sense, exclude the idea of malice aforethought, and thereby reduce the homicide to manslaughter.

To constitute murder in either degree " the homicide must have been committed with some degree of coolness and deliberation, or, at least, under circumstances in which ordinary men, or the average of men recognized as peaceable citizens, would not be liable to have their reason clouded or obscured by passion; and the act must be prompted by, or the circumstances indicate that it sprung from a wicked, depraved, or malignant mind—a mind which, even in its habitual condition and when excited by no provocation, would be liable to give undue control to passion in ordinary men—is cruel, wanton, or malignant, reckless of human life, or regardless of social duty." 10 *Mich.,* 219.

There must be, I repeat—

1. An unlawful killing of a human being. Every killing is unlawful if done without legal excuse or justification. A killing by accident and without fault, even negligence or in self-defense is excusable; if done by command of competent authority, it is justifiable.

2. There must be malice aforethought, which is the malignant intent to take life without excuse or justification, and without being prompted to it by heat of blood on reasonable provocation—the state of mind which has just been described. No person can properly take the life of another otherwise than in self-defense, or by legal command, or on the impulse of sudden passion caused by some sufficient provocation, unless he is actuated by a wicked and malignant disposition.

The desire and intent to take human life without provocation or necessity is such a state of mind or disposition as the law denominates malice; and the law imputes to every person who is responsible for his acts an intention to do and accomplish what naturally and immediately results from his voluntary acts.

The information charges that the prisoner, of his malice aforethought, killed Joshua Platt on the 29th day of July last, at the township of Oceana, in this county.

It is proved beyond dispute, and prisoner's counsel admit, that at the time and place stated the prisoner did kill Joshua Platt.

That act was committed without pretense of provocation, excuse, or justification.

Was it done with malice aforethought? The prisoner, by his defense, says, "No, because I was insane."

If he was *not* insane, and at the time and place mentioned in the information he saw Joshua Platt, stood in no fear of him, was excited by no sudden provocation sufficient to obscure the reason of an average man, and he held a gun that he knew contained a deadly charge—if, with such accompanying facts, the prisoner purposely and voluntarily discharged that gun at a vital part of Platt's body, at short distance from him, so that death at once ensued, the law would infer that he meant what such voluntary act would naturally accomplish; that if the prisoner voluntarily did such act as would naturally produce

death, and did produce it, he intended it. If, under such circumstances, that intention is shown to have been, and the jury find it was, deliberate and premeditated, even for a moment immediately before the discharge of the gun, the killing would be murder in the first degree. On the other hand, if it was a purpose formed suddenly, in great excitement—such as prevented deliberate premeditation—then, as there has been no such provocation proved as can reduce the killing to manslaughter, the offense was murder in the second degree.

But if the prisoner was *insane*, he was incapable of entertaining an intent, and, therefore, incurred no guilt at all, and should be acquitted.

In the absence of any proof on the subject of the prisoner's mental condition he could be presumed to have been sane; that is the natural state of adult minds.

Testimony has been submitted on the defense to show that the prisoner's mind was not in a natural state, and on the side of the people to show he was sane when he fired the gun at Platt. This is a very important and decisive question, and it is, therefore, desirable that it should be made as definite as possible.

Jurors are usually instructed in respect to such a defense that the prisoner is responsible for his acts if he was in such state of mind as to comprehend his relations to other persons, the nature of the act which he committed, and its criminal character, as against the laws of the land; in short, if he was conscious of doing wrong. 1 *Bish. Cr. L*, § 293.

It must be apparent, therefore, that before the defense of insanity can be properly accepted by the jury as established it must be supported by proof that satisfies the jury that there was, at the time of committing the act in question, such mental derangement as rendered the prisoner incapable of distinguishing between right and wrong in respect to that act. This irresponsible condition might result from such a degree or kind of mental disease as destroys the capacity to comprehend that death could be produced, or was likely to be produced, by shooting a gun loaded with buckshot, or as created a delusion producing a firm belief of such a state of facts as would, if true,

render the killing an excusable and justifiable homicide. That irresponsible condition, to use the language of the Supreme Court in a late decision, will be established if the jury find there was such " diseased action of the prisoner's mental faculties that he did not know what he was doing; or if conscious of this and yet was not conscious of any object in doing it; or if he did not know that what he was doing or the means he was using were adapted to or likely to kill; or, though conscious of all these, yet if this diseased action of his mind had so far overcome or perverted his reason that he did not know that what he was doing was wrong."

It is not every partial derangement of the mental faculties that will exempt from legal responsibility : it must be such as to prevent intelligent volition in respect to the act for which the respondent is on trial. He should have, as necessary to lia- bility, so much memory and power of perception and reflection as will enable him to identify his acquaintances, to recognize his relations to them, to understand, as ordinary minds do, the nature and uses of material objects around him, and to appreciate the obvious and universal obligation to abstain from violence. and bloodshed in the peaceable intercourse of his neighbors with him. · This is the basis of general responsibility. On it confessedly sane persons are judged. It is obviously true that among persons of equal intelligence there is not always equal repugnance to criminal conduct. Persons of ability to compre- hend the ethical difference between one act and another ·are very unequal in will power to regulate their own conduct. Between others there is also a great disparity in the extent and quality of their acquirements, as, also, in the vigor and power of their natural faculties. But all such differences are disregarded in determining responsibility for crime. All persons having sufficient ability to distinguish as to any particular act, whether it is right or wrong, are imperatively required to do right and refrain from wrong, and are equally amenable to the laws which apply to that act.

Where there is delusion there is insanity, that is, where per- sons believe things to exist which exist only, or, at least, in that degree, exist only in their imaginations, and of the non-existence

of which no proof can convince them, they are of unsolid mind. It is, however, only the belief which no rational person would believe that is insane delusion. To render such insanity a defense the delusion must have been of such a character as to affect the prisoner's judgment and incapacitate him to decide between right and wrong on the subject of the act of which he is accused.

The prisoner should not be convicted unless the jury is satisfied by the testimony, beyond a reasonable doubt, not only that he unlawfully killed Platt, but also that he was not insane and committed the homicide of his malice aforethought. If the jury find the prisoner guilty of murder, the verdict should specify whether he is guilty of murder in the first degree or in the second degree. If he be acquitted on the ground of insanity when the homicide was committed, let the verdict be " not guilty, because insane."

The jury failed to agree. It is understood that eleven were for conviction and one for acquittal.