Hawley, C. J.,
dissenting:
With that portion of the opinion of the court which decides that the instructions given by the court of its own motion cannot be considered, because not embodied in the bill of exceptions, I fully concur.
I also agree with the court that instruction number one given at the request of the prosecution, does not correctly state the true rule between murder of the first and murder of the second degree. But I dissent from some of the views expressed by the court relative to instruction number two.
In this case it is very properly admitted by the attorney-general and by the court that the second instruction, standing alone, is ambiguous and susceptible of an erroneous construction. This being true, upon what hypothesis can it be considered as correct ? In what portions of the other instructions are any words to be found Avhich qualify, relate to, or in any other manner explain the language or cover *381 tbe principle of law intended to be contained in this instruction? Can we interpolate qualifications that do not anywhere appear in any of the instructions given ? It seems to me that if any effect is to be given to the language used, as expressing the intention of the court giving it, it means just what it says and nothing else.
Admitting that the instruction relating to voluntary manslaughter was proper, yet neither in it or elsewhere is there any attempt to draw the line distinguishing murder from manslaughter. The jury was not told that if the defendant was not controlled by passion, but was impelled by deliberate revenge, or if he was under the control of his reason, then if he had formed the deliberate design to kill, even for an instant, it was murder in the first degree;nor in my judgment can any such meaning be reasonably implied from the language of the instruction. On the other hand, it does appear to me that the jury was in effect told that notwithstanding the facts stated in the instruction defining manslaughter, yet, to quote the language of the instruction, “if the jury believe from the evidence there was a design, a determination, distinctly formed in the mind at any moment before or at the time the pistol was fired, it was a willful, deliberate and premeditated killing, and therefore murder in the first degree.” This is not the law. When the facts of a homicide clearly show that the killing was done with an intent to take life, and the act of killing is not accompanied by any circumstances of justification, extenuation or excuse, as recognized by law, then the act of killing would be murder, and in such a case the deliberate and premeditated intent to kill need not, in order to make it murder of the first degree, have existed for any given length of time, it being sufficient that such intent actually existed before the commission of the act from which death ensued. ‘ ‘ But, ” as was said by Christiancy, J., in Maher v. The People, “if the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resuine its habitual control, and is the result of the tempo *382 rary excitement by which the control of reason was disturbed rather than of any wickedness of heart, or cruelty, or recklessness of disposition, then the law, out of indulgence to the frailty of human nature, or rather in recognition of the laws upon which human nature is constituted, very properly regards the offense of a less heinous character than murder, and gives it the designation of manslaughter.” (10 Mich., 219).
It does not appear in any of the instructions presented by the record, that the jury was informed that, if the act of killing was intentional, the offense might, nevertheless, be reduced to manslaughter, if committed “upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible.” (1 Comp. L. 2324.) The distinction between murder and manslaughter does not depend upon the question whether there was an intent to kill. (2 Bish. on Or. L. 676; Lewis, U. S. Cr. L. 396; Dennison v. The State, 13 Ind. 510; Maria v. The State, 28 Tex. 698; People v. Fred, 48 Cal. 436.) “Whether the homicide amounts to murder, or manslaughter merely,” to quote the language of Niles, J., in the case last cited, “does not depend upon the presence or absence of the intent to kill. In either case there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion * * * the law, out of forbearance for the weakness of human nature, will disregard the actual intent, and will reduce the offense to manslaughter. In such a case, although the intent to kill exists, it is not that deliberate and malicious intent which is an essential element in the crime of murder.”
In the absence of any explanation as to the difference between miprder and manslaughter in cases like the present, where there is an intent to take life, it does not appear to me that the jury could have understood the instruction in any other sense than that which its language imports. It may be that the evidence in this case would have justified the jury in finding the defendant guilty of murder in the first degree, but there was evidence tending to show that the act of killing was the result of a sudden and violent impulse *383 of passion, produced by an adequate provocation, sufficient to reduce the degree of crime to manslaughter, and hence the defendant was entitled to have correct instructions given upon this point; and having been convicted of murder in the second degree, the error in the instruction was, in my opinion, of such a character that it may have misled the jury to the defendant’s prejudice.
I differ from the court in its conclusions that the words “premeditated,” “a design, a determination, to kill, distinctly formed in the mind,” as used in the instruction, were sufficient to inform the jury of the distinction which it is claimed was intended to be made by the court below. The word “premeditated” is used as synonymous with “intent,” and hence, in determining what was meant, we must leave it out, and there is no other word or expression in this instruction which necessarily implies “ deliberation and malice aforethought,” without which the offense of murder in the first degree cannot be established. The legal definition of the word “intention,” according to Bouvier, is “ a design, resolve or determination of the mind,” so that in the legal, as well as ordinary signification of the words, the jury may have understood the instruction to mean: That if there was an intent to kill at any moment before or at the time the pistol was fired, “it was a willful, deliberate and premeditated killing, and therefore murder in the first degree.” In this case, although there was an intention to kill, yet if the jury believed from the evidence that the killing was “without malice, express or implied, and without any mixture of deliberation,” the crime was only manslaughter. (1 Comp. L. 2324.) It is not, perhaps, necessary that the court should give instructions embodying all the distinctions between the different degrees of crime. As long as the court gives correct instructions, the defendant cannot complain. If he wishes more explicit instructions, he must prepare them, and ask the court to give them. I agree with the court, that when the instructions, construed together as a whole, clearly set forth the law of the case, an ambiguity in some portion thereof will not necessarily vitiate the verdict. But when an error does clearly appear *384 in an instruction given by the court, and the error has not been cured by other instructions, it must in some manner affirmatively appear that the defendant could not have been prejudiced by the error. In my opinion it does not so appear in this case.
I think the judgment ought to be reversed.
A rehearing was granted in this case at the request of counsel for appellant, to enable them to fully argue the points upon which they relied for a reversal. In the petition for a rehearing, counsel for appellant, among other things, contended that the second instruction discussed in the opinions was a flagrant violation of the law; that it was not cured by any other instruction; that there were no other instructions which either modified or added to it; that it was an attempt to define murder, and that the instruction referred to by the court is one defining manslaughter. That the jury, after reading this instruction, if they were of the opinion that the defendant had formed a design to kill at any time before the fatal act, might have then stopped and found the defendant guilty of the higher offense without disregarding the definition of manslaughter in instruction number three, because in instruction number two the entire proposition is that if the design is formed before the killing, then the crime is murder. The jury accept that as a fact to control them; there is no qualification of it, no modification. It is a statement of an abstract legal proposition, to hold good in all cases. In other words, the test whereby to determine whether the offense be murder or manslaughter is, was there a distinct design formed to kill before the fatal act? That the instruction means nothing else, and cannot mean anything else, with any kind of regard for the use of language. The jury, being so instructed, may have found the defendant guilty of murder, provided they believed such design did exist or was formed, and they could have so concluded without doing violence to the instruction defining manslaughter, because instruction number two is to the effect that, if there be a design to kill, then the killing is murder, while the manslaughter *385 defined by tbe judge may be a killing upon a provocation without any such preconceived design, and a jury simply looking to the language in which they were instructed could come to no other conclusion.