The opinion of the court was delivered by
DeBlanc, J.
The verdict against defendant is “guilty of murder, without capital punishment.” In accordance with that verdict, he was sentenced to imprisonment in the Penitentiary for the term of his natural life, and has appealed to this court.
To obtain the reversal of the judgment pronounced against him, he relies on four grounds :
1. That his motion for.a new trial was improperly denied.
2 and 3. That the judge erred in admitting against him evidence which he considers as illegal, in refusing to charge — as he was requested to do — matters of law, and in charging as law applicable to this ease an erroneous construction of the law itself.
4. That he improperly interfered in the trial, by expressing his opinion of the value and weight of the testimony of a witness, while it was being delivered to the jury.
I.
Before the trial and out of court, the prisoner’s counsel informed the judge that he desired him to deliver in writing his charge to the jury. Do you in fact, asked the judge? I do, answered the counsel. The reply was, either I will prepare it or prepare myself to make it. “When the argument was closed, the counsel inquired of the judge *1324 whether he had prepared the charge, as he had been invited to do. He-stated that he had not, but that if the counsel insisted, he would adjourn court and do so. The jury had then been confined for two days- and two nights. Apprehending — as he swore he did — that, by requiring-them to be confined another night and perhaps another day, he would incense them against his client, the counsel did not insist on the desired and promised charge.
The counsel testified that the reason why he was particularly anxious for a written charge was that — -on a previous occasion — the judge had expressed an opinion highly unfavorable to the accused. What it was, we are not informed. The trial of this case seems to have been, strictly, but fairly conducted: the record does not contain the least trace-of any prejudice against the prisoner.
The important question here presented is: under the circumstances-which we have related, ought the judge to have given a written charge, without requiring the counsel to insist upon it ? It is true that the request so to charge had been irregularly made, but — howsoever irregular it was — that request had been acceded to, and the judge had1 promised to deliver the charge in the desired form, arid — we believe— should not, at a critical moment, have thrown, on the prisoner’s counsel, the responsibility of incurring the jury’s displeasure.
There is an unimportant difference between the statements on which the application for a new trial is based, and those certified to in the bill of exception: but, whether taken separately or collectively, they impress upon the mind the conviction that the counsel relied on the-judge’s promise, that he expected a written charge, and that — by the-judge’s unintentional failure to prepare it in advance — he was placed under a moral and difficult restraint, which is more easily understood than described, and from the fetters of which he could extricate himself but by renouncing an indisputable privilege, the exercise of which he considered of vital importance to his client. It does not appear that his renunciation was a free and untrammeled one; at least-, there is a, serious, a reasonable doubt that it was, and the benefit of that doubt, should not have been refused to one whose life was at stake, and whose-entire liberty has been declared forfeited by the verdict rendered against him.
We admit — as contended by the district attorney — that, when the-motion for a new trial is based on exclusively the appreciation of facts, the discretion of the district judge is unlimited, absolute, and his decision thereon final and irrevocable — but when, in an application for a new trial or otherwise, and from established facts, there flows a question of law, our jurisdiction extends to that question, and we have — then—the-constitutional power to review the decision of the lower court. 11 A, *1325 -478. In this instance, though he was not peremptorily denied, the ■prisoner was inadvertently deprived of a legal right.
II.
The judge charged the jury “that, where the killing is proved, malice is presumed by the law from the fact of killing, and that it was ■incumbent on the accused to prove any matter of excuse or extenuation,” etc. This unqualified charge was too broad: the law throws •around the prisoner, as a protective mantle, a presumption of inno■cence, whatever may be the crime for which he stands indicted. That rule has been adopted by, and — now—is in force in nearly every civilized State of the world. What would be its value and what would become of it, if the naked proof that the prisoner has killed, were to import — as a legal inference, that he has killed with malice and premeditation and that he is guilty of murder. Those adverse presumptions cannot co-exist: homicide is not always criminal: it may be justifiable and excusable: one may, without being guilty of any offence, kill •in.self-defence, to protect his property, to prevent a felony, in case of shipwreck and accidents, or in the lawful execution of the lawful mandate of a competent court. Were the criminality of the act attached • and linked to the unqualified proof of the act itself, the killing once •established, though it may be either justifiable or excusable, the State would be dispensed from proving the guilt of the accused, and he— under that perverted doctrine — would have to prove his innocence.
Before delivering this part of his charge, the judge had distinctly ■ instructed the jury that “ it was incumbent on the prosecution to prove, beyond a reasonable doubt, the commission of the alleged crime, etc.” -Considered separately from the other, this instruction was unobjectionable, but — coupled with the other — the jury could well draw, from both, the erroneous conclusion that, as soon as the killing had been established, the prosecution had proven, beyond a reasonable doubt, that it was done with malice and that defendant was guilty of murder.
The killing of itself may, but does not invariably constitute a crime. The circumstances which surround the act either attest or negative a ■ criminal intent: if none exist, the court — as said by Mr. Greenleaf — is justified in charging that, from the act of killing, unaccompanied by ■ circumstances of extenuation, malice is presumed, (he should have said “ may be inferred”) and that the burden of disproving it is then thrown upon the accused. This rule is as correct as rational and its application would prevent an otherwise unavoidable conflict between the presumptions established by law in favor of the State, and of the prisoner. The intention may be inferred from the act; but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law ■ to be applied by the court. Greenleaf.
*1326 In a note appended to the report of the case of Stokes vs. the People, Horrigan and Thompson remark that “it is evident that the profession are becoming more and more dissatisfied with the doctrine that malice is to be presumed from the proof of killing, without more, and also with the doctrine that, the fact of killing being established, the burden shifts on the defendant, of showing circumstances of excuse or justification. In addition to Stokes’ case in New York, and Tweedy’s in Iowa, we may note that the doctrine seems to be greatly shaken, if not overthrown, in Michigan, by the very able Supreme Court of that State, in Maher vs. The People, 10 Mich., 212.
See II. & T. cases on self-defence, p. 938, 939, and authorities therein cited.
In Waterman’s U. S. Criminal Digest, we find that “it is erroneous to charge the ’jury, on a trial for murder, that 'the homicide being proved, the law implies that the killing was wilful, deliberate and premeditated.” p. 276, No. 243.
In Iowa, “ it is error ” to charge the j ury, on a trial for murder, that if they find that the defendant inflicted the blow upon the deceased that caused his death, the burden of proof is upon defendant to show that he did it in self-defence.
Waterman U. S. Crim. Digest, p. 301, No. 492.
In York’s case, reported in 19 Metcalf, 93, discussing the rule which we have quoted from Greenleaf, Mr. Justice Wilde said : that it was founded in a state of society no longer existing; that it was inconsistent with settled principles of criminal law, and that it was not supported by the weight of authority. He was of opinion that the following conclusions were maintained in sound principles of law and manifest justice:
1. That, where the facts and circumstances accompanying a homicide are given in evidence, the question whether the crime is murder or manslaughter, is to be decided upon the evidence and not upon any presumption from the facts of killing.
2. That, if there be any such presumption, it is a presumption of fact, and if the evidence leads to a reasonable doubt whether the presumption be well founded, that doubt will avail in favor of the prisoner.
3. That the burden of proof in every criminal case is in the government to prove all the material allegations in the indictment, and if on the whole evidence, the jury have a reasonable doubt whether the defendant is guilty of the crime charged, they are bound to acquit him. Note to sec. 34,1st Greenleaf. This doctrine has been affirmed by Chief Justiee Shaw of Massachusetts and by the Supreme Court of Vermont, and is undoubtedly sustained by the soundest principles of law and of common sense.
*1327 It is manifest that the too rigid rule invoked by the counsel representing the State, that mere proof of the killing imports the deliberate intent to commit murder, would completely overthrow that paramount of all presumptions in criminal prosecutions, which is that — until the contrary be proved, the prisoner is presumed to be innocent, and also the almost universal doctrine that “to authorize the jury to return a verdict of guilty in a case of murder, the circumstances must not only be consistent with his guilt, but must exclude every other reasonable hypothesis.”
III.
On the trial, the district attorney asked a witness sworn for th¿ defence, the particulars of an alleged difficulty between him and the deceased. To the question propounded to that witness, defendant’s counsel objected on the ground that no answer elicited by that question could possibly be considered as in rebuttal of any evidence offered by the defence. The court overruled the objection, on the ground that the answer might prove the motive oE defendant’s act and whether he was actuated by malice. The court erred: The fact of the difficulty referred to was proven by the State; none of its particulars had been recited by any of defendant’s witnesses, and the counsel’s objection should have been sustained: “'the rule, -says Greenleaf, is now considered by the Supreme Court of the United States, to be well established, that a party has no right to cross-examine any witness, except as to facts and circumstances connected with the matters stated in his direct examination,” &c.
Greenleaf, vol. 1. p. 521 and 522, No. 445.
This rule applies to only the State, and as regards the cross-examination, by the State attorney, of defendant’s witnesses, and does not apply to the prisoner and as regards his examination of the witnesses sworn for the State. The reason of the rule is that, in its direct examination of its witnesses, the State must prove every fact on which it relies to ask and obtain a conviction, and that, as the prisoner’s right to introduce evidence in support of his defence, commences but when the direct examination on the part of the State is closed, he must be allowed to cross-examine the witnesses of the State as to any fact tending to establish his defence, whether the fact be connected with or disconnected from those testified to in the examination-in-chief.
In “the Philadelphia R. R. Co. vs. Stempson, Judge Story referred to that rule as a settled and broad principle, sometimes lost sight of, under loose practice at trials;” and, in State vs. Dennis, Mr. Justice Usley, commenting on two adverse decisions of this court, said : “The discretion, which in the cases referred to, is claimed for courts, to relax, to change or to utterly disregard rules of criminal evidence which the *1328 'legislature has decreed it obligatory on them to observe, would be ■ effectually to make the law a dead letter. Oases might certainly occur wherein a relaxation of the rule might serve to advance the course of .justice; but, this is no reason why the general rules of' evidence should not be observed, and until the law of evidence in criminal proceedings, :now extant, is partially or wholly changed, our courts are not justified ■ in exercising their discretion in regarding or disregarding rules of evidence, which our Legislature has adopted as a system. It was well said 'by Lord Kenyon that “rules of evidence are of vast importance to all ■orders and degrees of man, and that our lives, our liberty and our ■ property are concerned in support of them.”
In that case, the court held and we hold that, in a criminal prosecution, a witness — after his cross-examination, can be re-examined only ■in rebuttal or on matters elicited by his cross-examination. 19 A. 119.
IY.
The counsel for the prisoner complains that, in the presence and ' hearing of the jury, the judge remarked, referring to an explanation .- given by a witness for the State, “ that it was a most important and material explanation.” Though the judge did not state why, in whose ■ favor or against whom it was important or material, the remark was ■ unauthorized. In any case, and more particularly in a prosecution, the ; jurors justly look to the judge as their guide, and the expression of his ■ opinion — as to the legal value of a fact testified to — might lead them to ■ consider as useless a discussion of the fact thus declared important and material, and induce them to accept and adopt — as a finality — the . judge’s opinion as to its value.
Y.
On application of the district attorney, an entry made on the min- • utes of the court on the 13th of May was corrected on the 22d, for the ■ purpose of showing that the accused was present when he was arraigned ■and when the jury rendered their verdict. In this, there was neither impropriety nor error. The correction was extended to show facts which did not appear in the entry, though they really happened as -recited in the allowed amendment.
It is due to the judge of the lower court to state that his rulings . are not entirely without support, but they are in conflict with the weight of actual authority.
It is, therefore, ordered, adjudged and decreed that the judgment and sentence appealed from are avoided and reversed, the verdict of the jury annulled and set aside, and this case remanded to the lower court to be proceeded with according to the views herein expressed and -according to law.