## PEOPLE *v.* ENGLE.

118  287
e151  204

CRIMINAL LAW—VERDICT—INSTRUCTIONS URGING AGREEMENT.

Upon a prosecution for violation of the local option law, the testimony was in direct conflict. After being out all night, the jury announced that they were unable to agree, but were sent back by the court, with the direction that each should try to be persuaded, instead of trying to persuade his fellows. The jury, within an hour, returned a verdict of guilty, with the recommendation that the court fix the penalty as light as the law would allow. *Held*, that the direction was calculated to convey to the individual juror the impression that the verdict need not be the result of his own convictions, and was therefore erroneous.

Exceptions before judgment from Van Buren; Buck, J. Submitted June 16, 1898. Decided October 3, 1898.

M. A. Engle was convicted of violating the local option law. Reversed.

*Benjamin F. Heckert*, for appellant.

*James E. Chandler*, Prosecuting Attorney, for the people.

LONG, J. In July, 1897, the local option law was in force in Van Buren county. Respondent was a registered pharmacist, and was charged in the information with having sold, furnished, and delivered, on July 23, 1897, to one Charles T. Benham, one bottle of beer, to be used as a beverage. The pharmacy was owned and kept by W. A. Engle, and the respondent was in his employ as a clerk. It appears that Charles T. Benham and F. S. Persing were employed by the prosecuting attorney and sheriff of the county to look up liquor cases in that county, and were paid $5 a day each for their services. Benham went by the name of F. C. Hart, and Persing by the

name of F. J. Freeman, and so registered at their different stopping places in the county. On the day the beer is alleged to have been sold, they arrived in Hartford, Van Buren county, about noon, and stopped at an hotel. Benham testified that, at about 9 o'clock in the evening, he and Persing went into the Engle store, and found the respondent there, and asked him for a bottle of export beer; that respondent said he would get it for them; that—

"He went down cellar, and came up with a bottle. We stood at the head of the stairs leading down cellar. * * * The respondent brought back a bottle of lager beer, and asked if he should open the bottle. I told him, 'Yes,' and he drew the cork; and he says, 'Boys, you will have to step to the door to drink it.' And we stepped just outside of the door, on the back steps, and drank the beer, came back, and he was standing on the stairs. He said: 'Set the bottle right down there; it will be all right.' I paid him 20 cents, and went out. We didn't inform Mr. Engle the purpose we wanted to put the beer to. He didn't ask us. He said nothing about it."

Mr. Persing was called, and testified to the same transaction having taken place at the time given by Benham. They both testified that they did not go into the store except on that occasion, and were not there in the afternoon. The people then rested.

The respondent testified that he was not in the store at the time mentioned, but that he went from it about 8 o'clock; that he sold Benham no beer on that night, but that about 4 o'clock in the afternoon the parties came in, and asked him for some beer; that Mr. Persing, who called himself Freeman, asked for it. Respondent then testified:

"Freeman is the name he gave. He said he would like to get a couple of bottles. I asked him if he wanted it for medicine, and he said he did. I asked him his name, and he gave the name of F. J. Freeman, and I put it on the book, and he took the beer, and went out. This was about 4 o'clock in the afternoon. * * * "

Mr. Woolsey, a half brother of the respondent, was

also a clerk in the store. He testified that he was in the store that night, and that respondent went out of the store at 8 o'clock; that no such transaction took place that night as testified to by Benham and Persing. Milo Wolcott testified that he saw Benham and Persing come out of the store about 4 o'clock that afternoon, and saw them all the evening at the hotel, which was his headquarters; that, when he saw them come out of the store, one of them had a long package done up in a piece of paper. It was the theory of the respondent that this package was the two bottles of beer just purchased from him.

The business of druggist is a lawful business, in which the legislature has recognized the necessity for the sale of all kinds of liquors to adult persons, at all times, day or night, even where the local option law is in force. The restriction placed upon the sale is that it shall be sold only for medicinal, chemical, scientific, mechanical, or sacramental purposes. The statute further provides that it shall not be sold to any person as a beverage, to be drunk on the premises; and that the druggist shall keep a blank book in which shall be recorded the names of all persons applying for such liquor for any of these lawful purposes, the date of each sale, the amount and kind of liquor sold to each person, and the purpose to which the same is to be applied, as stated by the purchaser. 3 How. Stat. § 2283c6. Respondent claimed to have fully complied with this statute.

.The question in the case is whether the sale was made at 9 o'clock in the evening, and under the circumstances claimed by the people, or at 4 o'clock in the afternoon of the day, under the circumstances testified to by respondent. If the sale was made as claimed by the two witnesses for the people, there was a violation of the law; if sold under the circumstances stated by respondent, there was no violation of the law, and the respondent was wrongfully convicted.

There is but one question in the case which we deem

important to discuss. It appears that the jury had been out all night, and, returning into court in the morning, they were asked if they had agreed upon their verdict, and, answering in the negative, the court asked:

"Do you think you have exhausted every reasonable effort to agree?

"*The Foreman:* Yes, sir; we have been over the testimony several times.

"*The Court:* I was very sorry, gentlemen, that you were obliged to remain out all night with this case. The work of a jury is hard enough if it only works when court is in session, without having to be out all night; but the interests of both the people and the respondent are important in this case, and it is very important that you should, if possible under the testimony, agree upon a verdict. Now, I have no doubt that you have done just as your foreman says,—gone over the testimony very carefully and conscientiously, and endeavored to agree upon a verdict, so far as you have been able to; but perhaps, on further reflection, you may be able to do so. I certainly hope so. Now, I make this suggestion: I have no doubt that each side has used all the powers of persuasion, that of the individual jurors, to convince his fellow jurors of the case as it looks to him. Now, suppose you go out and try the reverse, and let each of you try as hard as you can to be persuaded, instead of trying to persuade the others. Try and persuade yourselves, those who do not agree with their fellow jurors, and see if, looking over the testimony carefully and listening to all the arguments that those who do not agree with you may use, you cannot come to the same verdict. In view, as I have said, of the importance of the verdict in this case, I do not feel like discharging you at this time. It is now early in the morning. You have had your breakfast. Make yourselves as easy and comfortable as you can, and think the matter over carefully. Divest yourselves of all sort of preconceived opinions about the case on either side up to this time. Start right in now just as if you had first gone out, and see what you can do. You may again retire, gentlemen."

Within an hour after this charge, the jury returned a verdict of guilty, but with the recommendation that the court fix the punishment or fine as light as the law would allow in such cases.

Counsel for the people contends that the instruction comes within the rule laid down in *Com.* v. *Tuey,* 8 Cush. 1, where the trial court, among other things, charged the jury:

"But in conferring together you ought to pay proper respect to each other's opinions, and listen—with a disposition to be convinced—to each other's arguments; and, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent, with himself, and who have heard the same evidence with the same attention, with equal desire to arrive at the truth, and under the sanction of the same oath; and, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

That court before that, however, had stated in the same connection to the jury:

"Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other."

That charge was approved by the supreme court of Massachusetts.

In the present case, however, the jury were not instructed that the verdict to which they agreed should be and must be each individual juror's own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows; but, on the contrary, they were instructed just the reverse,— that they must each try to be persuaded. We think the court was in error in this

instruction, and that its substance had a tendency to make the jurors feel that they must give way their honest convictions upon the merits, and agree with the majority, though they had a reasonable doubt of the guilt of the respondent. This may have been what the minority did, and in consequence of which the foreman, in announcing the conclusion, recommended that the court should be lenient in passing sentence. For this reason the verdict must be set aside, and a new trial granted.

We have examined the other questions raised, and find no error in them.

The other Justices concurred.