PEOPLE v. PEPPER

OPINION OF THE COURT

1. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY.

Instructions to the jury, whether comprised of only a principal charge or principal and supplemental charges, are reviewed in their entirety in an effort not so much to determine whether errors were made on any isolated issue but to ascertain whether their effect was prejudicial, where the defendant claims on appeal that the instructions given denied him a fair trial.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—SUPPLEMENTAL CHARGE—PREJUDICE.

A supplemental instruction responding to questions submitted by the jury, which reiterated the previously enunciated elements of the offense charged, the lesser included offenses, and the possible verdicts, gave an approved definition of intent clarifying the principal charge, and admonished them of the necessity that they reach a verdict was not so prejudicial as to deny the defendant a fair trial where the instruction did not unduly emphasize the element of intent even though the definition might more appropriately have been included in the principal charge, did not direct the jury that they had a duty to infer intent, and did not coerce a verdict from them.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial § 842.
[3] 53 Am Jur, Trial § 748 et seq.
[4] 53 Am Jur, Trial § 759 et seq.
[5] 53 Am Jur, Trial § 950 et seq.
[6, 11] 40 Am Jur 2d, Homicide § 514 et seq.
[7] 40 Am Jur 2d, Homicide § 535.
[8] 31 Am Jur 2d, Expert and Opinion Evidence § 31.
[9, 10] 31 Am Jur 2d, Expert and Opinion Evidence § 151.
[12, 13, 18, 19, 21] 40 Am Jur 2d, Homicide § 112.
[14] 29 Am Jur 2d, Evidence § 11.
[15] 29 Am Jur 2d, Evidence § 167.
[16] 53 Am Jur, Trial § 555.
[17] 53 Am Jur, Trial § 680 et seq.
[20] 53 Am Jur, Trial § 514.

3. HOMICIDE—INSTRUCTIONS TO JURY—ELEMENTS OF CRIME—REASONABLE DOUBT.

A supplemental instruction to the jury that a reasonable doubt need only exist as to any one of the elements of homicide in order to allow an acquittal was not erroneous where the principal instruction had precisely and accurately defined the doctrine regarding the existence of a reasonable doubt.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—COERCION OF VERDICT.

A supplementary instruction in a trial for homicide in which the trial court cautioned the jurors to deliberate slowly, with a mind open to the arguments of others and a willingness to re-examine personal beliefs, explained to them the time and expense involved in every trial, and encouraged them that no 12 citizens were any better suited to decide the issues presented was not improper, because it did not suggest that personal beliefs were to be compromised, coerce a verdict, or contradict the principal instruction that the verdict was the responsibility of each juror.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—COERCION OF VERDICT.

Additional instructions to the jury which correctly state the law will not be held erroneous merely because they were given at one time rather than another and will not be presumed to be given for the purpose of coercing a verdict, nor so found, except upon convincing evidence.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—HOMICIDE—THEORY OF DEFENSE.

Comments by the trial court in a jury instruction that no claim of self-defense appeared on the record in the homicide case before it was permissible where there was no evidentiary support for that defense, and did not obligate the court to instruct the jury as to the defense of accident for which the defendant had submitted proof where there had been no request made by the defendant to have the jury instructed on that theory of defense (MCLA § 768.29).

7. HOMICIDE—FIRST-DEGREE MURDER—LESSER INCLUDED OFFENSE—MANSLAUGHTER—INSTRUCTIONS TO JURY—EVIDENCE.

Testimony regarding hostile feelings between the decedent and a defendant being tried on a charge of first-degree murder sufficiently supported an instruction to the jury on the lesser included offense of manslaughter (MCLA § 750.321).

8. WITNESSES—QUALIFICATION OF EXPERTS—DISCRETION.

The determination of a witness's qualifications to testify as an expert is within the discretion of the trial court.

9. HOMICIDE—EVIDENCE—EXPERT WITNESSES—PROPENSITY OF WEAPON—ADMISSIBILITY—DISCRETION.

Admission of the testimony of a police officer concerning the particular propensities of the gun which caused the death of the decedent, used to rebut the defendant's testimony that it had accidentally discharged, was not an abuse of discretion where the officer had been qualified as an expert on guns by evidence showing that he had worked in the area of firearms identification for 17 years whereby he obtained vast knowledge concerning the individual characteristics of such weapons.

10. WITNESSES—EXPERT WITNESSES—OPINION—FOUNDATION.

An expert witness in a criminal trial may state his opinion concerning the propensities of the gun which caused the death of the decedent in a homicide case without first giving the factual data upon which that opinion is based unless an inquiry into that factual data is pursued by the opposing party.

DISSENT BY LEVIN, J.

11. HOMICIDE—DEFENSES—INSTRUCTIONS TO JURY.

*Instructions to the jury that self-defense was not present in the homicide case before them had the effect of implying to the jury that the only defense available was self-defense, was misleading and confusing, and was reversibly erroneous where that instruction was inconsistent with the defense of accident for which the defendant submitted proofs and where the court did not instruct the jury that accident was a good and valid defense even though, as an aside in a supplementary instruction, the court mentioned that accident was a possible defense.*

12. HOMICIDE—DEFENSES—INNOCENT HOMICIDE.

*There are two categories of innocent homicide for which there is no criminal liability: justifiable homicide authorized or commanded by law, and excusable homicide in which death is a result of an accident where the actor was not criminally negligent.*

13. HOMICIDE—INTENT—PRESUMPTIONS—INSTRUCTIONS TO JURY.

*An instruction to the jury that if it found that the defendant caused the death of the victim the law presumes that he did*

*so intentionally was erroneous because it was tantamount to
a peremptory instruction that the jury had the duty to find
that the killing was intentional and had the effect of eliminat-
ing altogether the defense of accident for which the defendant
had submitted proofs.*

14. Criminal Law—Evidence—Instructions to Jury—Presump-
tions—Inferences.

> *The trial court may not instruct the jury in terms of "pre-
sumption" rather than in terms of "permissible inference" un-
less it is prepared to take an issue from the jury on the
ground that the law conclusively presumes a fact from un-
derlying facts; all that a judge may properly say to jurors
where the prosecution has introduced evidence sufficient to
give rise to a presumed fact is that if they find that underlying
facts have been established, they* may, *not* must, *infer the
fact that the prosecution seeks to establish and he may not
tell the jury that if they find that the underlying facts have
been established, the fact inferred from them must be pre-
sumed.*

15. Criminal Law—Presumptions—Innocence.

> *The concept of a conclusive or mandatory presumption conflicts
with the overriding presumption of innocence with which the
law endows an accused in a criminal case and which extends
to every element of the crime.*

16. Trial—Instructions to Jury—Erroneous Instruction.

> *Conflicting instructions to the jury, one of which is erroneous,
require reversal of the jury's verdict because it is presumed
that the jury may have followed that which was erroneous.*

17. Criminal Law — Intent — Presumptions — Instructions to
Jury.

> *The law deduces intent from the act itself for purposes of shift-
ing the burden of going forward with the evidence, but does
not deduce intent as a substitute for decision by the jury,
and it is misleading to instruct the jury in terms of the pre-
sumption regarding intent without a clear statement by the
judge of the limited purpose for which the law deduces a
presumed fact from the underlying facts.*

18. Homicide—Murder—Intent—Accident.

> *A criminal intent, coupled with an accidental occurrence, cannot
constitute either first or second-degree murder.*

19. HOMICIDE—INSTRUCTIONS TO JURY—INTENT—DEFENSES—ACCI-
DENT.

   *An instruction to the jury in a homicide case that they must
   return a verdict of guilty of some degree of felonious homicide
   if they found that the defendant intended to kill the victim
   but which failed to charge them regarding the defense of
   accidental shooting was erroneous where the defendant had
   submitted proofs for his defense of accident.*

20. CRIMINAL LAW—INSTRUCTIONS TO JURY.

   *The trial judge has a duty in a criminal case to instruct the
   jury as to the law applicable to the case even in the absence
   of a request to charge.*

21. HOMICIDE—DEFENSES—ACCIDENT—INSTRUCTIONS TO JURY.

   *Failure to instruct the jury on the defense of accident in a
   homicide case was reversibly erroneous even in the absence
   of a request by the defendant for that instruction where the
   question of accident was made pivotal in the case by the
   defendant's proofs at trial.*

Appeal from Recorder's Court of Detroit, George
W. Crockett, Jr., J. Submitted Division 1 February
5, 1971, at Detroit. (Docket No. 9895.) Decided
October 19, 1971. Leave to appeal granted, 386
Mich 785.

Jodie Pepper was convicted of manslaughter.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Angelo A. Pento-
lino,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and R. B. BURNS and
LEVIN, JJ.

J. H. Gillis, P. J.   Defendant, Jodie Pepper, was charged with murder in the first degree, MCLA § 750.316 (Stat Ann 1971 Cum Supp § 28.548), and was convicted by a jury of manslaughter, MCLA § 750.321 (Stat Ann 1954 Rev § 28.553). His testimony was that the gun accidentally discharged while being removed from his pocket, but the rebuttal testimony of a police officer from the firearms identification division of the scientific bureau was that a gun such as the one involved herein could not accidentally discharge.   With this and other evidence, the jury was instructed as to the applicable law and was requested to render its verdict.

It is as to these instructions that defendant raises 10 of the 11 issues presented on appeal, arguing primarily that the substance and effect of certain supplementary charges were so prejudicial as to deny him a fair trial.   Our review goes to the charge in its entirety (*People* v. *Dye* [1959], 356 Mich 271), in an effort not so much to determine whether errors were made as to any one isolated issue, but to ascertain if defendant received a fair trial. *People* v. *Mosley* (1953), 338 Mich 559; *People* v. *Boyles* (1968), 11 Mich App 417.   Supplemental charges are considered along with the principal charge (*People* v. *Green* [1967], 7 Mich App 346) and are therefore viewed as being a portion thereof.

We do not find the charge here under attack to be riddled with the prejudicial error attributed to it by the defendant.   The supplemental charges resulted solely from questions submitted by the jury, and the court, in responding thereto, essentially reiterated the previously enunciated elements of the offense, the lesser offenses included therein and the possible verdicts to be rendered.   Having anticipated the jurors' apparent problem in deliberating (not

through any discussion with individual jurors as defendant suggests), the court provided an approved definition of intent (adapted from *People* v. *Carmichael* [1858], 5 Mich 10; *People* v. *Scott* [1859], 6 Mich 287; *People* v. *Resh* [1895], 107 Mich 251; see also 2 Gillespie, Michigan Criminal Law & Procedure [2d ed], § 906, p 1244); such served to clarify the initial instruction that specific intent to commit an illegal act must be established beyond a reasonable doubt in order to permit a finding of guilt. It is argued that this definition belonged more appropriately in the principal charge, but we are not convinced, as defendant contends, that the giving of it separately unduly emphasized this element or directed the jurors that they had a duty to infer intent.

The juror's remaining concern regarding the existence of reasonable doubt was correctly explained by the trial court; defendant admits that a precise and accurate definition of this doctrine had been given previously, and we find no error to have occurred in the court's additional explanation that such doubt need only exist as to any one of the elements of homicide in order to allow an acquittal.

Finally, the trial court herein cautioned the jurors to deliberate slowly, with an open mind to the arguments of others and a willingness to re-examine personal beliefs, explained to them the time and expense involved in every trial, and encouraged them that no 12 citizens were any better suited to decide the issues presented. We do not find in such pronouncements a suggestion that personal beliefs were to be compromised nor any of the objectionable infirmities found in *People* v. *Engle* (1898), 118 Mich 287, or *People* v. *Barmore* (1962), 368 Mich 26. Having previously stated that the verdict was the

responsibility of each juror, the court nowhere contradicted such statement or coerced a verdict.

In essence, we apply the statement found in *People* v. *Hoffmann* (1905), 142 Mich 531, 585, that if a trial court believes "that the instructions he has given a jury should be amended, corrected or enlarged, he ought to give additional instructions" so as to clarify any confusion. That is all the court herein attempted to do and we find no error in his presentation of these supplemental charges.

"If the law is correctly stated, instructions are not to be held erroneous because given at one time rather than at another time. That additional or repeated instructions are given for the purpose of coercing a verdict will not be presumed, nor be found except upon convincing evidence." *People* v. *Hoffmann, supra,* at 585.

The comments by the court that no claim of self-defense appeared on the record were permissible under the authority of MCLA § 768.29 (Stat Ann 1954 Rev § 28.1052), and do not, as suggested, obligate the court to instruct on a defendant's theory of the case. Such an instruction, if supported by the record, need be given only where a proper request is made; no request was submitted in this matter.

With the evidence before it, we conclude that the trial court precisely charged this jury as to the law applicable to this case. The testimony regarding hostile feelings between decedent and defendant sufficiently supported a charge on the lesser included offense of manslaughter. See *People* v. *Galarno* (1966), 3 Mich App 491.

The remaining issue concerns the admissibility of testimony from a police officer concerning the particular propensities of the type of gun which caused decedent's death. Determination of a witness's ex-

pert qualifications is addressed to the discretion of the trial court (*People* v. *Hawthorne* [1940], 293 Mich 15); as it was shown that this witness worked in the area of firearms identification for 17 years whereby he obtained vast knowledge concerning the individual characteristics of such weapons, we find no abuse of discretion in permitting the introduction of his testimony. *People* v. *Charles Wilson* (1970), 27 Mich App 171. The opinion offered by such a witness need not be prefaced by the factual data on which it is based unless such inquiry is pursued by the opposing party. *People* v. *John Willie Williams* (1970), 26 Mich App 218.

In conclusion, we hold that the trial court nowhere exceeded the bounds of his discretion or erred in his application and pronouncements of the law. On such a record, no error can be found.

Affirmed.

R. B. BURNS, J., concurred.

LEVIN, J. (*dissenting*). The defendant, Jodie Pepper, was charged with first-degree murder and convicted of manslaughter. The people's evidence tended to show that he shot the victim after they and others had been drinking together and an argument over a girl. Pepper took the stand and denied that there had been an argument and claimed that the gun discharged accidentally as he took it from his pocket to hand to the victim who was going to attempt to sell it for him.

Nowhere in the judge's charge to the jury did he mention, or even allude to, the defense that the shooting was an accident.

The judge instructed the jury that to establish a "felonious homicide" the prosecutor must prove that (1) the deceased was a human being, (2) he is now

dead, (3) the defendant caused his death, (4) the defendant intended to cause his death, and (5) the defendant did not act in *self-defense*.

The judge repeated his recital of the five elements several times during his principal charge and again during a supplemental charge after the jurors requested clarification. He thereby repeatedly stressed that it would be a defense if Pepper had acted in self-defense. However, the defense was not self-defense but accidental discharge of the gun as the judge himself belatedly recognized and, as an aside, stated in his supplemental charge;[1] even then he did not intimate, let alone state, that if the jurors found that the discharge of the gun was accidental they must acquit Pepper.

In stressing as a possible defense a defense which Pepper did not advance, a defense inconsistent with the actual defense, the charge was misleading and confusing. In implying that the only defense was self-defense, in failing to recognize and to instruct the jurors that accident was a good and valid defense, the charge was incorrect.[2]

---

[1] In his supplemental charge the judge declared, during the penultimate review of the five elements, in response to a juror's request that he "go over the five points again that are necessary":

"The first one was that the deceased, Frank York, was alive and is now dead. I don't know why anybody should have any difficulty with that. However, let me always caution you that my reaction is not what is controlling. It's your reaction.

"The next point. That's two points, really, that he was alive, that he is now dead. The next point is that the defendant caused the death. The defendant was the moving factor that set in motion whatever it was that caused his death.

"The next point was that the defendant intended to cause his death. And the next point was that the defendant did not act in self-defense.

"Now as I recall the testimony you need not even concern yourself with number 5. There is no claim here that there was self-defense. So actually I think the only thing on which you might be a bit hung up is number 4,"
to which statement jurors responded: "That's right."

[2] "Homicide, the killing of one human being by another, may be innocent or criminal. There are two categories of innocent homicide;

The just-mentioned errors in instructing the jurors were compounded by the judge's supplemental instruction. After the jurors retired to consider their verdict they returned and requested additional instructions on first-degree and second-degree murder, and that the definition of manslaughter be read again; the foreman said, "we also would like the five points cleared up for us". The requests were complied with and after reiteration of the earlier instructions the jurors retired. Later they again returned and indicated that they might not be able to agree on a verdict. The judge asked if they had "some other specific questions" and the foreman requested the judge to "go over the five points again that are necessary". The judge repeated his instruction regarding the five elements (see fn 1), and it developed that the jurors were concerned with the fourth element in his recital, *i.e.,* did Pepper intend to cause the victim's death. Over the strong objection of Pepper's trial lawyer, the judge then instructed the jurors as follows:

"Something has been said about intent in this case, and as bearing upon that question, I say to you that where an unlawful act is done, the law *presumes* it was done with an unlawful intent.

"Intent, except when confessed, is a matter of *presumption.* Intent, unless confessed, can only be proved by acts, as jurors cannot look into the breast of the accused. And where an act is knowingly committed, it naturally leads to certain consequences, and a jury has a right to draw the inference, as they draw all other inferences, from the facts in evidence which to their minds fairly prove its existence.

they are called justifiable homicide and excusable homicide. Homicide is 'justifiable' if it is authorized (*e.g.,* self-defense) or commanded (*e.g.,* execution of a death sentence) by law. *Homicide is 'excusable' if the death is the result of an accident* and the actor was not criminally negligent." (Emphasis supplied.) *People* v *Morrin* (1971), 31 Mich App 301, 310.

"If the direct tendency of a man's willful act is to produce injury and injury is in fact produced, the intent to produce it is in law deducible from the act itself, for the law *presumes* that every person intends the usual consequences which accompany the use of the means employed in the manner employed." (Emphasis supplied.)

## I.

The supplemental charge was wrong on several counts:

A. The essence of the instruction was to inform the jurors that since Pepper caused the victim's death the law *presumes* he did so intentionally. It was tantamount to a peremptory instruction that the jurors should find that Pepper intentionally killed the victim. Although the jurors could properly infer intent to kill from the evidence presented in this case, it was improper to instruct them in effect that they had a duty to do so.

It was undisputed, as the judge observed during his charge, that "the defendant caused the death".[3]

---

[3] The judge said:

"Here again I hazard a comment on the facts [earlier he had said: 'But, that's a comment made by me on a factual issue, and that's not binding on you'], because here again I don't think there is any real dispute that Frank York [the victim] once lived and that he is dead and that he died as a result of a bullet discharged by a weapon in the hands of the defendant. The deceased was a human being who once had life, he is now dead, *and the defendant caused the death.* But those are comments by me on the facts. It's up to you to decide from the evidence whether or not those three elements have been established beyond a reasonable doubt." (Emphasis supplied.)

One could, of course, contend that if the gun went off accidentally Pepper did not "cause" the victim's death. Such semantic points are likely to be lost on a jury even if they are carefully made in clearly phrased instructions. Here the judge did not draw that possible distinction in the meaning of the word "cause"; indeed, he moved away from it, saying in his supplemental charge (fn 1) that Pepper caused the victim's death if he "was the moving factor that set in motion *whatever it was* that caused his death". (Emphasis supplied.)

To charge a jury in that context that intent "is a matter of presumption", and that "if the direct tendency of a man's willful act is to produce injury and injury is in fact produced, the intent to produce it is in law deducible from the act itself" was to eliminate altogether the defense of accidental shooting. The jurors could understandably reason—indeed, if they followed the clear tendency of the judge's instructions they were bound to reason—that since Pepper caused the victim's death and the intent to produce his death is "in law deducible from the act itself" that Pepper must be guilty.

I recognize that sprinkled through the supplemental charge are the phrases "unlawful act", "willful act", "knowingly committed" and the word "law". A dialectician with a copy of the judge's supplemental charge in written form in front of him and a clear understanding of the law of homicide, the legal meaning of the words "lawful", "knowing", and "willful" and the difference between a legal presumption and a permissible inference, might be able to harmonize the supplemental instruction with the defense of accidental shooting.

I am satisfied, however, that the undefined, question-begging phrases, "unlawful act", "willful act", "knowingly committed", and the word "law" left no lasting impression on the lay jurors who heard the judge's supplemental instruction but once, and that what came through to them in response to their request for clarification was that from the act of causing the death of the victim, the law deduced, indeed presumed, the intent to produce that result and, thus, since Pepper's actions were unquestionably a cause of the victim's death he must under the law have intended to kill him.

B. Unless a court is prepared to take an issue from the jury on the ground that the law conclu-

sively presumes a fact from underlying facts, it is always a mistake to charge a jury in terms of "presumption" rather than in terms of "permissible inference".  As our Supreme Court has said:

"The immediate legal effect of a presumption is *procedural*—it shifts the *burden of going forward with the evidence* relating to the presumed fact." (Emphasis supplied.)  *In re Wood Estate* (1965), 374 Mich 278, 289.

In a civil case, if a party to whom the burden of going forward with the evidence has shifted does not produce evidence tending to disprove the underlying facts which give rise to the presumption, he risks jury instruction that the presumed fact has been established. *In re Wood Estate, supra.*  In a criminal case, however, the concept of a conclusive or mandatory presumption conflicts "with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime."[4]

"However clear the proof may be, or however uncontrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury."  *People* v. *Flack* (1891), 125 NY 324, 334 (26 NE 267, 270).[5]

"The trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act."  *Morissette* v. *United States* (1952), 342 US 246, 274 (72 S Ct 240, 255; 96 L Ed 288, 306).

"The material facts in controversy upon which there is a conflict of evidence must not be assumed

---

[4] *Morissette* v. *United States* (1952), 342 US 246, 275 (72 S Ct 240, 256; 96 L Ed 288, 307).

[5] Similarly, see *People* v. *Doud* (1923), 223 Mich 120, 124; *Roberts* v. *People* (1870), 19 Mich 401, 416.

by [the judge in his instructions] to have been proven. It is for the jury to say whether or not the evidence is sufficient to establish such facts, and they are the sole judges of the credibility of the witnesses and the weight of the testimony. It must be apparent, on review, that the verdict rendered is that of the jury, and not the expressed opinion of the trial court." *People* v. *Lintz* (1928), 244 Mich 603, 618.

Since the jury in a criminal case may never be instructed that because of a failure of the defendant to disprove underlying facts the presumed fact must be deemed established, it is always misleading and confusing to instruct jurors in a criminal case in terms of presumption rather than in terms of permissible inference. All that a judge may properly say to jurors in a criminal case is that if they find that the underlying facts have been established, they *may*, not must, whether or not the defendant has controverted with evidence the people's evidence, infer the fact which the prosecutor seeks to establish by inference from underlying facts.[6]

In a sense the *law* does, indeed, presume from the doing of certain acts that they were done with the

---

[6] While in the legal lexicon the terms "presumption" and "inference" can mean the same thing, to many persons they have different meanings. The judge did not state that when he spoke of a presumption he meant only a permissible inference. As will appear from a reading of the supplemental instruction concerning intent, the judge charged the jurors that "where an unlawful act is done, the law *presumes* it was done with an unlawful intent", and intent "is a matter of *presumption*", and then that "a jury has a right to draw the *inference*, as they draw all other inferences, from the facts in evidence which to their minds fairly proved its existence", and then concluded with "the intent to produce it is in law deducible from the act itself, for the law *presumes* that every person intends the usual consequences which accompany the use of the means employed in the manner employed". (Emphasis supplied.) The established rule is that "when conflicting charges are given, one of which is erroneous, it is presumed that the jury may have followed that which was erroneous, and the verdict will be reversed". *Silverstone* v. *London Assurance Corporation* (1913), 176 Mich 525, 534; *People* v. *Kanar* (1946), 314 Mich 242, 253.

proscribed intent. Thus, proof that an accused person killed another person gives rise to a "presumption" that the act was done with malice. Independent evidence of malice is not required, and the trier of fact *may*, therefore, draw the requisite inference of intent from the fact alone that the accused person killed the victim. "Once it was established that the accused killed the victim, the burden was upon the accused to prove circumstances of justification, excuse, or mitigation." *People* v. *Morrin* (1971), 31 Mich App 301, 315. But, as we observed in the cited case (p 316): "To instruct a jury that malice is presumed from the fact of killing is to invite confusion concerning the ultimate burden of proof in the trial".

There is no need to instruct jurors in the sense in which the law presumes a fact, *i. e.*, that the proponent of the presumed fact has established with evidence the underlying facts thereby requiring submission of the proponent's case to the jury. There is no need to tell the jurors that in the court's judgment there is sufficient evidence to submit the case to them. It is apparent from the fact that the case is being submitted that the court is of that mind.

While the "law" does, for purposes of shifting the burden of going forward with the evidence, deduce intent from the "act itself", it beclouds the question facing jurors to instruct them about a procedural point of law especially when the limited purpose for which the law deduces intent is not stated. *The law does not deduce intent as a substitute for decision by the jury.* But that is what the jurors no doubt understood, or at least could well have understood, *without a clear statement by the judge of the limited purpose for which the law deduces a presumed fact from underlying facts.*

## II.

Although in this case the judge charged the jurors that Pepper could not be found guilty unless he intended to kill the victim, that was not the equivalent of instructing them that they should acquit him if they found that the gun went off accidentally. We have no reason to believe that the jurors, untutored in the law, would understand, without any statement whatsoever from the judge, that the judge meant that Pepper must be acquitted if the shooting was, as he claimed, an accident, particularly under the circumstance that the judge repeatedly instructed them that self-defense—not an issue—would be a defense and was completely silent as to whether the claimed defense, accidental discharge of the gun, was a valid defense. The jurors could well have reasoned that, while self-defense was a possible defense, since the judge failed to instruct them that if they found that the shooting was accidental Pepper would not be guilty, accidental shooting was not a defense.

It was not enough for the jurors to find that Pepper harbored the intent to kill the victim. "The law does not punish evil intent or even every act done with the intent to commit a crime",[7] nor does it punish "every act done toward the commission of a crime".[8] Pepper was not guilty unless he intended to cause the victim's death *and* caused the victim's death *with* the purpose of accomplishing that result. "A criminal intent, coupled with an accidental occurrence, cannot constitute either first or second-degree murder."[9]

Accordingly, whether Pepper harbored the proscribed intent or not, if the gun went off accidentally

---

[7] *People* v. *Bowen* (1968), 10 Mich App 1, 13.
[8] *Commonwealth* v. *Peaslee* (1901), 177 Mass 267, 271 (59 NE 55, 56).
[9] *People* v. *Schafer* (1971), 36 Mich App 316.

he was not criminally liable. It was, therefore, error to fail to instruct the jurors, in addition to the charge that they must find that Pepper intended to kill the victim, that they must also find, contrary to Pepper's claim, that the gun did not go off accidentally as he was removing it from his pocket to hand it to the victim.

## III.

The law in this state is settled that even in the absence of a request to charge, a trial judge has the "duty to charge the jury as to the law applicable to the case, his failure to do so constituting reversible error". *People* v. *Oberstaedt* (1964), 372 Mich 521, 526. In this case the only disputed issue, the pivotal issue, was the defendant's claim that the gun discharged accidentally, a claim totally ignored in the instructions. The statement of the Supreme Court in *People* v. *MacPherson* (1949), 323 Mich 438, 452, is in point:

"The charge of the trial court stating some of the elements of the offense involved in the case, without reference to others, would have a natural tendency to cause a jury to believe that those stated were exclusive."[10]

[10] See, also, *People* v. *Liggett* (1967), 378 Mich 706, 715, 717; *People* v. *Kanar, supra*, p 252; *People* v. *Guillett* (1955), 342 Mich 1, 7, 8.