PEOPLE v BYNUM

OPINION OF THE COURT

1. HOMICIDE—INSTRUCTIONS TO JURY—MANSLAUGHTER—SECOND-DE-
GREE MURDER.

A trial judge's final summarizing instructions to a jury on the
crime of manslaughter which were in terms of second-degree
murder could only have compounded the jury's confusion about
the proper law to apply and constituted reversible error.

2. CRIMINAL LAW—INDETERMINATE SENTENCES—MAXIMUM SENTENCE
—MINIMUM SENTENCE—TWO-THIRDS RULE—STATUTES.

An indeterminate sentence where the minimum term exceeds
two-thirds of the maximum term is improper since by case
precedent it is required that the minimum term cannot exceed
two-thirds of the maximum term (MCLA 769.8; MSA 28.1080).

CONCURRENCE BY D. E. HOLBROOK, JR., J.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—LACK OF CLARITY.

*A jury instruction that is far from a model of clarity is not
erroneous without more.*

4. HOMICIDE—INSTRUCTIONS TO JURY—SECOND-DEGREE MURDER—
MANSLAUGHTER—MALICE AFORETHOUGHT.

*Malice aforethought is the distinguishing element between sec-
ond-degree murder and manslaughter; therefore, a jury instruc-
tion on manslaughter was not erroneous as being a definition of
second-degree murder where the trial court did not mention*

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 420 *et seq.,* 718, 837.
[2] 21 Am Jur 2d, Criminal Law § 540.
[3] 75 Am Jur 2d, Trial § 604 *et seq.*
[4] 40 Am Jur 2d, Homicide §§ 498–500.
[5, 6] 40 Am Jur 2d, Homicide §§ 265, 267, 509.
    75 Am Jur 2d, Trial §§ 758–761.
Right or duty of court to instruct jury as to presumptions. 103 ALR
126.

*malice and each of the other elements enumerated is consistent
with an instruction for manslaughter.*

5. HOMICIDE—MALICE—DEADLY WEAPONS—PERMISSIBLE INFERENCES—
   MANDATORY PRESUMPTIONS.

   *Only a permissible inference of malice may be drawn from the
   use of a deadly weapon in the commission of a homicide; it is
   not a mandatory presumption.*

6. HOMICIDE—SECOND-DEGREE MURDER—MANSLAUGHTER—INSTRUC-
   TIONS TO JURY—MALICE—DEADLY WEAPONS—PERMISSIBLE IN-
   FERENCES—MANDATORY PRESUMPTIONS.

   *A presumption arises that a jury applied an incorrect instruction
   when a correct instruction and an incorrect instruction are
   given on the same point; therefore, a judge's instructions to the
   jury were reversibly erroneous where the trial court correctly
   instructed the jury that malice may be inferred from the use of
   a deadly weapon in the commission of a homicide, incorrectly
   instructed the jury three times that malice is presumed, and
   gave two questionable instructions to the jury on the subject.*

Appeal from Wayne, Joseph G. Rashid, J. Sub-
mitted January 12, 1975, at Detroit. (Docket No.
20617.) Decided May 18, 1976.

Kenneth R. Bynum was convicted of second-de-
gree murder. Defendant appeals. Reversed and
remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training and Appeals, and
*Lee William Atkinson,* Assistant Prosecuting At-
torney, for the people.

*Steven L. Schwartz,* Assistant State Appellate
Defender, for defendant.

Before: BRONSON, P. J., and R. B. BURNS and
D. E. HOLBROOK, JR., JJ.

Per Curiam. Defendant was found guilty by a jury of second-degree murder, contrary to MCLA 750.317; MSA 28.549, and sentenced to a prison term of from 21 to 30 years. He appeals, raising six alleged errors. We discuss only one which mandates reversal, and another which is likely to occur upon retrial.

The jury was instructed by the trial judge at the close of all proofs that three different verdicts were possible: (1) guilty of second-degree murder; (2) guilty of manslaughter; and (3) not guilty. It is not clear whether the instruction on manslaughter as a lesser included offense was requested by defense counsel or not. There were no written requests to charge, nor were there any requests made orally on the record.

The vast majority of the time spent in the final instructions was devoted to defining second-degree murder and manslaughter, and attempting to explain the difference between these two offenses. Defense counsel objected at the close of the instructions only to the failure of the trial court to give an instruction on defendant's intoxication as negating the element of malice. The trial judge refused to give that instruction, and the jury retired at about 11:30 a.m. to deliberate. When the jury returned at 4:15 p.m. to be excused for the night, the foreman indicated that he had a request to make. Th judge stated that he would consider it when court reconvened the next morning.

The next day the jury foreman requested that the jury be recharged on the definitions of second-degree murder, manslaughter, and malice. He also requested the trial court to indicate again the three possible verdicts the jury could return, and he stated that several jurors would like to have the testimony of the two key prosecution witnesses

reread. The judge refused to go over the testimony, but he did redefine second-degree murder, manslaughter, and malice. He also restated the three possible verdicts. At about 10:30 a.m. that day the jurors were again excused to resume their deliberations. Neither side voiced any objections to these supplemental instructions.

The foreman of the jury returned at 2:15 that afternoon with a new series of requests. He indicated that the jurors were unclear whether the provocation necessary to support a manslaughter conviction had to be shown by the evidence or could be presumed. The trial judge responded that it could not be presumed, and went into the burden of proof on that issue. The foreman then wanted to know if manslaughter could be committed when malice is shown, and the judge stated that malice is not an element of manslaughter. Next the foreman asked the court to expound on the inference of malice which is permissible from the use of a weapon or the nature of the act. The judge responded by giving an extended explanation of malice. He also redefined reasonable doubt upon request.

As his final request at that time, the foreman indicated that the jury wished to know the difference between the terms "heat of blood" and something "arising of a sudden". The following exchange occurred:

"*Juror Five:* We have one final question, your Honor. Is there some way you could explain the difference between the terms heat of blood and something arising of a sudden?

"*The Court:* Now, in this terminology heat of blood means when the passions are so excited that one cannot because of the frailty of human nature be fully aware

of what he is doing. He is moved because of an inflamed passion. That is heat of blood.

* * *

"Now, you say—what was the other term that you used?

"*Juror Five:* The heat of blood and something arising of a sudden.

"*The Court: Well, I explained to you what manslaughter was. I told you it was an intentional killing, that must occur prior to or immediately at the time of the killing, and that intention must be formed suddenly and at the moment and at the time prior to the killing, unlike first degree murder which require* [sic] *premeditation and deliberation.* I used the illustration of where two men are engaged in an affray, and this is purely illustration, and suddenly one becomes angry and forms the intent, then and there before doing the act, to kill or to take a life, that is the intentional killing which must be formed immediately prior or at the time of the killing. That is as far as I choose to go.

"*Juror Five:* I think you have answered all our questions.

"*The Court:* I can't give you any more lecture on the course of crimes.

"*Juror Five:* Yes, sir, you have answered all the questions.

"*The Court:* All right." (Emphasis added.)

There were no objections by counsel for either side, and the jury was excused for further deliberations at 2:42 p.m. They returned a verdict of guilty of second-degree murder 35 minutes later.

Our problem is apparent from the face of that final summarizing instruction. The trial judge instructed on manslaughter by giving the definition of second-degree murder. We think it is unfortunate that this error occurred after long instructions on the offenses of second-degree murder and manslaughter. However, the incorrect instruction

came at a vital time. The jury was obviously quite confused in its attempt to distinguish between these two crimes. The very last thing the jury was told, in a manner indicating that they should ask for no further clarification, was that manslaughter is the intentional killing with malice aforethought but without premeditation—actions they had previously been told constituted second-degree murder. This erroneous supplemental instruction could only have compounded the jury's confusion about the proper law to apply, and constituted reversible error, *People v Townes,* 391 Mich 578, 586–591; 218 NW2d 136 (1974).

The defendant in this case was sentenced to a prison term of 21 to 30 years in violation of the two-thirds rule of *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972). If defendant is convicted upon retrial, the trial court should be careful to comply with the mandates of Tanner.

We do not know what defense theory of the facts will be pursued upon retrial, nor which lesser included offenses will be requested. Therefore, we can only indicate that the trial judge should examine the recent case of *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), before deciding whether to instruct upon voluntary manslaughter and/or involuntary manslaughter.

Reversed and remanded.

D. E. Holbrook, Jr., J. *(concurring).* The majority states that the trial court's instruction on manslaughter, quoted in the majority opinion, is reversible error. I cannot agree with that view of the trial court's instruction. However, in reviewing the defendant's other allegations of error, I find one that requires me to vote to reverse the defendant's second-degree murder conviction.

## I.

The majority characterizes the quoted instruction as a manslaughter instruction defined in terms of second-degree murder. While this instruction is far from a model of clarity, that alone is not error. *Cf., Elliott v A J Smith Contracting Co, Inc,* 358 Mich 398, 409, 412; 100 NW2d 257 (1960).

A careful reading of the challenged instruction reveals that it does not define second-degree murder. Second-degree murder is defined as a criminal homicide *with* malice aforethought. *People v Allen,* 39 Mich App 483, 501, n 17; 197 NW2d 874 (1972) (LEVIN, P. J., dissenting), *adopted,* 390 Mich 383; 212 NW2d 21 (1973), Perkins on Criminal Law (2d Ed), p 34. Manslaughter is defined as a criminal homicide *without* malice aforethought. *People v Onesto,* 203 Mich 490, 496; 170 NW 38 (1918), *People v Morrin,* 31 Mich App 301, 314, n 17; 187 NW2d 434 (1971), *lv den,* 385 Mich 775 (1971), Perkins, *supra,* p 51.

Throughout its instructions the trial court was very careful to emphasize that malice aforethought was the distinguishing element between second-degree murder and manslaughter. In this instruction, which the majority labels as a second-degree murder instruction, the trial court failed to mention malice. Each of the other elements enumerated by the trial court is consistent with an instruction for manslaughter.

## II.

Throughout its instructions the trial court stated that malice could be presumed or inferred from the use of a deadly weapon. Malice, however, is only a permissible inference that may be drawn

from the use of a deadly weapon. *People v Martin,* 392 Mich 553, 561; 221 NW2d 336 (1974), *Maher v People,* 10 Mich 212, 218; 81 Am Dec 781 (1862). See also *People v Pepper,* 36 Mich App 437, 448–452; 194 NW2d 67 (1971) (LEVIN, J., dissenting), *rev'd* 389 Mich 317; 206 NW2d 439 (1973). It should not be treated as a mandatory presumption. *People v Morrin, supra* at 319.

During the instructions in the present case the trial court correctly instructed the jury twice that malice may be inferred; incorrectly instructed the jury three times that malice is presumed; and gave two questionable instructions to the jury on the subject. When a correct instruction and an incorrect instruction are given on the same point, a presumption arises that the jury applied the incorrect instruction. *People v Clark,* 340 Mich 411, 418; 65 NW2d 717 (1954), *People v Eggleston,* 186 Mich 510, 514–515; 152 NW 944 (1915), *People v Sangster,* 33 Mich App 712, 715; 190 NW2d 317 (1971). This is especially true when the incorrect instructions outnumber the correct instructions and are scattered throughout the entire charge. *Cf., People v Hammack,* 63 Mich App 87, 95; 234 NW2d 415 (1975).

I vote to reverse the conviction and remand the case to the trial court.