PEOPLE v DOLSEN

Docket No. 78-5011. Submitted June 27, 1980, at Detroit.—Decided
December 15, 1980. Leave to appeal applied for.

Defendant, Maynard E. Dolsen, was convicted in Wayne Circuit
Court, John R. Kirwan, J., of assault with intent to commit
murder. His delayed application for leave to move for a new
trial was denied and defendant filed a delayed application for
leave to appeal. The Court of Appeals granted leave to appeal
by order dated June 8, 1979. The issues addressed on appeal
are whether the trial court committed error by giving a jury
instruction on presumed intent and, if so, whether such error
mandated reversal of defendant's conviction. *Held:*

1. The instruction given by the trial court was a constitution-
ally impermissible instruction on presumed intent and the
potential hazard of the jury interpreting the presumption as
feared was not removed by other correct instructions given at
trial.

2. An error in charging the jury does not automatically
dictate reversal of a defendant's conviction. Under harmless
error analysis, applicable in this case, if the reviewing court is
able to declare a belief that the erroneous instruction was
harmless beyond a reasonable doubt, the conviction may be
affirmed. Under the facts and circumstances of this case, the
constitutionally erroneous jury instruction on presumed intent
was harmless beyond a reasonable doubt.

Affirmed.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — INTENT — PRESUMED
INTENT — JURY INSTRUCTIONS.

A jury instruction, in a case in which intent is an element of the
crime charged, which states that the law presumes that a
person intends the ordinary consequences of his voluntary acts
violates the Fourteenth Amendment's requirement that a state

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 82, 83.
   75 Am Jur 2d, Trial §§ 719, 781.
[2] 5 Am Jur 2d, Appeal and Error § 776.
[3] 5 Am Jur 2d, Appeal and Error § 783 *et seq.*

prove every element of a criminal offense beyond a reasonable doubt (US Const, Am XIV).

2. Criminal Law — Jury Instructions — Error — Harmless Error.

A trial court's error, in a case in which intent is an element of the crime charged, in charging a jury prior to March 4, 1980, with constitutionally impermissible jury instructions on presumed intent does not automatically dictate reversal of a defendant's conviction; rather, the facts and circumstances of the case must be reviewed to determine if the error was harmless.

3. Criminal Law — Jury Instructions — Error — Harmless Error — Standard of Review.

Harmless error analysis requires the reviewing court to be able to declare a belief that an erroneous jury instruction was harmless beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Mardi Crawford,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. Gillis, P.J., and V. J. Brennan and A. C. Miller,* JJ.

V. J. Brennan, J. Defendant was convicted by a jury of assault with intent to commit murder. MCL 750.83; MSA 28.278. On December 6, 1973, he was sentenced to a term of 15 to 30 years imprisonment. He now appeals by leave granted.

The charge against the defendant arose out of the September 4, 1973, shooting of James Grover, the complaining witness at trial. Grover identified the defendant as the assailant who entered his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

home and shot him twice. Defendant's defense was essentially that he was not the assailant.

On appeal, defendant raises numerous issues of which only one merits discussion. Defendant contends that the jury instruction on "presumed intent" impermissibly shifted the burden of proof from the prosecutor to the defense. The trial court, after instructing the jury that the intent to commit murder was a necessary element of the charged offense, stated:

"In determining what a person intended, it is obviously impossible for you to place yourself into the mind of another human being to determine what that human being intends. However, you may draw inferences as to what a person intended from any facts in evidence which to your mind fairly proves the existence of such intent.

"It is also presumed, members of the jury, *that a reasonable being intends the ordinary natural consequences of his voluntary act.*" (Emphasis added.)

No objection was made to the instruction at the time of trial. In fact, trial counsel expressed satisfaction with the court's charge.

Instructions on "presumed intent" have been the genesis of numerous conflicting decisions by this Court. *People v Adams,* 48 Mich App 595; 210 NW2d 888 (1973), *People v Jordan,* 51 Mich App 710; 216 NW2d 71 (1974), *People v Pepper,* 36 Mich App 437; 194 NW2d 67 (1971), *rev'd* 389 Mich 317; 206 NW2d 439 (1973), *People v Ross,* 69 Mich App 705; 245 NW2d 335 (1976), *lv den* 399 Mich 831 (1977). While instructions on "presumed intent" have various forms and permutations, the constitutionality of this particular challenged instruction, or variation thereof, that "the law presumes that a person intends the ordinary conse-

quences of his voluntary acts" has been now decisively settled.

The narrow question recently presented in *Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979), was:

"[W]hether, in a case in which intent is an element of the crime charged, the jury instruction, *'the law presumes that a person intends the ordinary consequences of his voluntary acts,'* violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." 442 US 510, 512. (Emphasis added.)

The Supreme Court concluded that the instruction was violative of Fourteenth Amendment due process, and, hence, unconstitutional. The *Sandstrom* Court reasoned that the jury could interpret the charge as either a mandatory conclusive presumption or, alternatively, as a burden shifting presumption. On either interpretation, the instruction was constitutionally infirm. A conclusive presumption "would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury". 442 US 510, 523. Alternatively, a burden shifting presumption would impermissibly shift the burden of proof to the defendant "to prove that he lacked the requisite mental state" and would violate the requirement that the "State must prove every ingredient of an offense beyond a reasonable doubt". 442 US 510, 524. Thus, the Supreme Court held that the instruction under either plausible interpretation would deprive a defendant of his right to due process of law. Hence, the instruction was unconstitutional.

Recently, the Michigan Supreme Court in *People v Wright* and *People v Perez*, 408 Mich 1; 289 NW2d 1 (1980), adopted the *Sandstrom* rationale as applied to a similar "presumed intent" instruction. The challenged instruction, *inter alia,* was that "the law presumes that every man or woman intends the natural, the probable and the legitimate consequences of his or her own willful and voluntary acts". The Michigan Supreme Court concluded that the holding in *Sandstrom* was controlling and that the instruction could not survive a constitutional challenge.

Thus, upon the clear, unambiguous mandate of *Sandstrom* and *Wright,* this Court finds that the challenged instruction in the instant case that "it is presumed that a reasonable being intends the ordinary, natural consequence of his voluntary act" is a constitutionally impermissible instruction on presumed intent. We likewise find that the "potential hazard of the jury interpreting the presumption as feared was not removed by other correct instructions given at trial dealing with the presumption of innocence afforded the accused and the state's burden of proving each and every element beyond a reasonable doubt". *Wright, supra,* 22.

Having concluded that the challenged instruction is constitutionally invalid, we now consider the issue of whether defendant is entitled to an automatic reversal of his conviction and a new trial. Again, we find the recent pronouncements of *Wright* to be controlling.

In *Wright,* the Court rejected an automatic reversal rule. Instead, the Court deemed the harmless-error analysis as the appropriate remedy for constitutionally invalid jury instructions given prior to the *Sandstrom, Wright* and *Perez* decisions.

"We conclude that the error in charging the jury with the instructions disapproved today does not automatically dictate reversal of the defendants' convictions. That conclusion is based upon our belief that such instructions are not grounds for automatic reversal as a matter of Federal law. Should the United States Supreme Court ultimately decide that *Sandstrom* error is never harmless, we would, of course, be obligated to implement such a rule.

"We regard harmless error analysis as appropriate in this case where the trial preceded authoritative disapproval of these instructions by this Court and the United States Supreme Court. We do not, however, foreclose the possibility that we might, as a matter of Michigan constitutional law or in the exercise of our supervisory power adopt a more stringent approach to protect against continued use of these improper instructions should they recur in post-*Sandstrom*, post-*Wright*-and-*Perez* cases." *People v Wright, supra*, 28-29.

In the instant case, defendant was tried in 1973, and, hence, is subject to the pre-*Sandstrom*, pre-*Wright*-and-*Perez* "harmless-error" analysis. Accordingly, we conclude that the error in charging the jury does not automatically dictate reversal of the defendant's conviction and, consequently, the prosecutor's "confession of error" is inappropriate. Rather, we deem it necessary to review the facts and circumstances of defendant's case to determine if the error was harmless.

Harmless-error analysis requires the reviewing court to be able to declare a belief that the erroneous instruction was harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967). Harmless error is described in *Wright* as follows:

"The watershed for determining whether an erroneous jury instruction affected the outcome of a trial is the harmless-error rule of *Chapman v California, supra.* The purpose of that rule is to 'block setting aside

convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial'. *Id.,* 22. Constitutional errors in instructing the jury 'which in the setting of a particular case are so unimportant and insignificant' do not require automatic reversal of a conviction. *Id.* The harmless-error rule thus recognizes that in determining the effect an erroneous instruction has upon the validity of the defendants' conviction, cognizance must be taken of the fact 'that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge'. *Cupp v Naughten,* 414 US 141, 147; 94 S Ct 396; 38 L Ed 2d 368 (1973)." *Wright, supra,* 30-31.

In the instant case, after a close scrutiny of the facts and circumstances of defendant's case, we conclude that the instructional error was harmless beyond a reasonable doubt.

The case against defendant essentially reduced down to whether or not the defendant was the person who shot the victim, James Grover. Grover was the prosecutor's chief witness at trial. According to his testimony, he was home alone on the evening of September 4, 1973. At approximately 10 p.m., he heard a noise at the side of his home. He then saw the defendant, whom he recognized because he had known him previously, open the side door and enter. Grover greeted the defendant and began to walk toward him. While standing approximately five to six feet away, defendant pulled a gun from behind his back and shot Grover. Grover testified that he heard four shots being fired. After being struck Grover fell to the floor. Thereafter, he was struck in the head with a hard object. A telephone cord was then wrapped around Grover's neck, feet and hands. During this time, Grover was told that, if he moved, a "hole would be blown

through his head". Grover then lost consciousness. At trial, the victim, Grover, unequivocally identified the defendant as the man who shot him.

The identity of the defendant was further corroborated by the testimony of a ninth-grade neighbor boy. He testified that he heard sounds like firecrackers. He then looked out the window and saw defendant coming out of the side door of the Grover home. He testified that the defendant spoke to two people, whom the boy did not recognize, in a blue van. The defendant went back into the house and then came out again. At trial this witness also unequivocally identified the defendant as the person he saw that evening at the Grover home.

The defense was predicated on the fact that defendant was not the person who shot the victim. The defendant produced a number of witnesses who testified to having seen the defendant at various times on the night in question. Hence, the issue presented to the jury was clearly whether or not defendant was the assailant. The credibility of the witnesses and the weighing of the evidence was a jury question. The jury, on the evidence reviewed above, decided that the defendant was the assailant.

Conversely, the intentions of the assailant were never in dispute. It was uncontroverted that the victim was shot twice, hit over the head, tied up and left. In light of this overwhelming evidence, there was no real issue but that the assailant intended to commit murder.

Under the facts and circumstances of this case, we are able to say that the constitutionally erroneous jury instruction on "presumed intent" was harmless beyond a reasonable doubt.

Defendant's conviction is affirmed.